Hanson BRATTON, et al.,
Plaintiffs-Appellants,

v.

The CITY OF DETROIT, MICHIGAN,
Defendants-Appellees,

and

Guardians of Michigan, et al., Intervening Defendants-Appellees.

No. 80–1837.

United States Court of Appeals,
Sixth Circuit.

June 3, 1983.

Rehearing and Rehearing En Banc Denied Aug. 4, 1983.

K. Preston Oade, Jr., Ramsdell, Oade & Feldman, Southfield, Mich., for plaintiffs-appellants.

O. Peter Sherwood, New York City, James Andary, Detroit, Mich., Warren J. Bennia, New York City, for appellees.

Before MERRITT and JONES, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

### ORDER

■ The appellants have petitioned this Court for a rehearing en banc in the above-captioned case, 704 F.2d 878. A majority of the Court not having favored such a rehearing, that petition is denied.[1]

■ The panel has reconsidered its initial position, however, and has determined that Section IVC of the opinion must be withdrawn. Upon further reflection, the panel majority has determined that the fears expressed in paragraph three of that section and in Section I of the dissent cannot be adequately allayed by an attempt to limit the impact of the district court's final order. "Since we do not now hold that the bounds of constitutionally *permissible* action are coexistent with what a governmental em-

ployer may be constitutionally *required* to do" (at 900), we believe that the district court's incorporation of the plan into a final decree was inappropriate and that our initial attempt to narrowly construe the order insufficiently remedied that impropriety. Upon consideration, we agree that in the context of judicial review of a *voluntary* affirmative action plan, the body adopting that plan must remain the "front line actor" primarily responsible for the plan's operation. (at 902.)

Accordingly, the panel has chosen to adopt the recommendation of the dissent, vacating the final order of the district court[2] and remanding this cause for further consideration in light of the 1980 census. (at 902.)

### ORDER

The June 3, 1983 order of the court denying the petition for rehearing en banc is hereby supplemented with the dissenting opinion of Circuit Judge Wellford, as follows:

"WELLFORD, Circuit Judge, dissenting. I respectfully dissent from the denial of rehearing *en banc* because I believe that the district court, in approving the affirmative action program in question, inappropriately considered the racial breakdown of the Detroit population as a whole instead of the racial breakdown of the applicable qualified labor pool. The correct test in determining whether a minority is proportionately represented in a particular occupation is to compare the percentage of the occupation's minority members to the percentage of the eligible and qualified workers who belong to that minority group. The Supreme Court has cautioned against utilizing general population statistics where, as here, only a limited segment of the population qualifies for the position in question. *See Hazelwood School District v. United States,* 433

---

1. The United States Government has requested the right to submit an amicus curiae brief in support of the appellant's petition for rehearing *en banc.* In light of the fact that that request was received after a majority of the full court had chosen not to favor an *en banc* rehearing

and after the original panel had unanimously agreed to amend the initial disposition of this case, the Government's request is now moot.

2. *Baker v. City of Detroit,* 504 F.Supp. 841 (E.D.Mich.1980).

U.S. 299, 308, 97 S.Ct. 2736, 2741–42, 53 L.Ed.2d 768 (1977) and *Int'l. Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 339, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977). At the same time it was, under the circumstances, appropriate that an adjustment should have been made to take account of any prior discrimination which may have resulted in fewer blacks serving as sergeants, in fashioning an affirmative remedy to resolve the difficult problem presented in this case. I believe the entire court should have addressed the problem presented in relying on general population figures which include persons who clearly do not possess qualifications even for an entry level position on the police force and who obviously are not members of the relevant labor force. *See Grano v. Dept. of Dev. of City of Columbus*, 637 F.2d 1073, 1078 (6th Cir. 1980) (decision of J. Keith).

Two apparent portions of the general population at least should have been excluded from any consideration of relevant statistical data in this case. One such area would be those too young and immature to qualify for a position as police lieutenant,[1] and the other aspect of age disqualification would be those too old and physically incapable by reason of age to serve. Another general population group that should have been excluded would have been those who have inadequate education or mental capacity to serve in this important and sensitive position requiring at least some modicum of training background, education and mental or intellectual skills. Census data was available to eliminate those who by reason of age or education were disqualified; it is evident that this was not taken into account by the panel, which therefore disregarded U.S. Supreme Court guidance in this regard:

> When special qualifications are required to fill particular jobs, comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value. *Hazelwood School*

*District, supra.* 433 U.S. at 309, n. 13, 97 S.Ct. at 2742, n. 13.

The City's expert himself testified that it was essential to define the *relevant labor market* to determine racial disparity, if any, in the work force under consideration. *See Hazelwood, supra*, 433 U.S. at 308, 97 S.Ct. at 2741–42 and *Detroit Police Officers' Ass'n., supra*, 608 F.2d at 688, which recognize that the *metropolitan Detroit labor market* as the best basis for comparison, not general population figures for the City. This is not to indicate that more general population racial statistical data, which is not as accurate, does not have some relevance, even though its probative value may be slight.

Sound statistical data in this case was essential for this court to determine whether there "is a sound basis for concluding that minority underrepresentation is substantial and chronic, and that the handicap of past discrimination is impeding access [and promotion] of minorities." *Detroit Police Officers*, at p. 694, citing *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 324, 98 S.Ct. 2733, 2765, 57 L.Ed.2d 750 (1978).

As in *Mayor v. Educational Equality League*, 415 U.S. 605, 621, 94 S.Ct. 1323, 1333, 39 L.Ed.2d 630 (1974):

> "this is not a case in which it can be assumed that all citizens are fungible for purposes of determining whether members of a particular class have been unlawfully excluded."

Persons who may adequately serve as police lieutenants have special qualifications that many in the general population simply do not have. I believe that there has been a failure to consider the best and available statistical data, and that there should have been an *en banc* consideration in this case.

Revision or elimination of Section IV–C of the original panel opinion in this case

---

1. In *Detroit Police Officers Ass'n v. Young*, 608 F.2d 671, 679 (fn. 4) (6th Cir.1979), it was recognized that a relevant labor market would exclude those under *twenty-five years of age* for the position of Detroit Police sergeant.

does not in any way solve the problem addressed in this dissent.