Timothy JANOWIAK, Plaintiff,

v.

The **CORPORATE CITY OF SOUTH BEND**, Board of Public Safety, South Bend Fire Department, Mayor Roger Parent, Timothy Brassell, Fire Chief, Robert Potvin, Stanley M. Przybylinski, Defendants.

**Civ. No. S82–0209.**

United States District Court, N.D. Indiana, South Bend Division.

Dec. 29, 1983.

Victor and Patrick McFadden, South Bend, Ind., for plaintiff.

David A. Nowak, Deputy Atty. Gen., Linley E. Pearson, Indiana Atty. Gen., Indianapolis, Ind., for defendants.

MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

I.

This case was filed pursuant to 42 U.S.C. §§ 1983 and 2000e–2(a)(1), by an individual

seeking redress for the putative violation of his civil rights by an alleged act of employment discrimination. Jurisdiction of this court over the claims presented is predicated on 28 U.S.C. §§ 1331 and 1343 for the civil rights claim, and 42 U.S.C. § 2000e–5(f)(3) for the employment discrimination (Title VII) claim. The matter is presently before this court on defendants' motion for summary judgment.[1]

The gravamen of plaintiff's complaint is that he has been subject to reverse discrimination. Specifically, he complains that he was denied employment as a firefighter by the City of South Bend's Fire Department (Fire Department) solely because of his race (caucasian, white). Plaintiff alleges, and the defendants do not deny, that after submitting to a series of physical and written examinations between July 19, 1980 and October 7, 1980, plaintiff was ranked second on the list of thirty-one applicants for the position of firefighter.

Pursuant to an affirmative action plan adopted by the Fire Department earlier that same year, the list of applicants was in turn divided into two lists: a "minority pool" for non-white applicants, and a "non-minority pool" for white applicants. Nine of the thirty-one applicants were minority members, i.e., black or hispanic, while the remaining twenty-two applicants were white.

On October 28, 1980, it was decided in a public hearing that five applicants would be hired by the Fire Department. However, rather than simply hire those five individuals with the highest scores (all of whom were white), the Fire Department decided, in keeping with the affirmative action program mentioned above, to hire the four top-scoring applicants from the "minority pool", and the highest scoring applicant from the "non-minority pool". Thus, despite the fact that plaintiff outscored all but one of the white applicants, and all of the minority applicants, he was not considered for employment as a firefighter.

On July 7, 1981, plaintiff filed a charge of employment discrimination against the named defendants with the Equal Employment Opportunity Commission (EEOC). On February 19, 1982, plaintiff received a notice of right to sue letter from the EEOC, dismissing his discrimination claim. Plaintiff thereupon filed this action, seeking both damages and injunctive relief.

In their motion for summary judgment, defendants raise as their first argument the plaintiff's allegedly untimely filing of his charge with the EEOC. Defendants contend that the plaintiff did not file his employment discrimination complaint with the EEOC within the requisite 180 days, and his failure to do so therefore divests this court of subject matter jurisdiction.

The plaintiff counters by arguing (1) his employment discrimination charge *was* timely filed with the EEOC; (2) even if not timely filed, the defendants have waived the affirmative defense of the 180-days statute of limitations by failing to raise it during the EEOC proceedings; or, (3) whether the charge was timely filed or not, the actions of one of the defendants' agents were such that the running of the 180-day time limit was equitably tolled. Each of the above will be addressed in its turn.

■ Plaintiff's argument that his complaint was timely filed with the EEOC is without merit. It is axiomatic that the untimely filing of a charge with the EEOC renders the Title VII claim or the civil

1. At a hearing held in open court on September 24, 1982, the parties were given to and including April 1, 1983, in which to file any summary judgment motions. On April 1, 1983, defendants filed their motion for summary judgment. The plaintiff responded indirectly to the motion for summary judgment by filing a motion for leave to file an amended complaint on April 25, 1983. Leave to amend was granted on April 29, 1983. Then, on June 1, 1983, plaintiff filed a motion in opposition to defendants' motion for summary judgment. The defendants filed a supplemental memorandum in support of their motion on July 13, 1983, and a second hearing was then held in open court the following day on said motion. The plaintiff having filed his supplemental brief in opposition to the motion for summary judgment on October 11, 1983, and the defendants having filed their second supplemental memorandum in support of said motion on October 12, 1983, this matter is now ripe for ruling.

rights claim appended thereto subject to dismissal for failure to meet the statute of limitations. *United Airlines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Heymann v. Tetra Plastics Corp.*, 640 F.2d 115, 120 (8th Cir. 1981); *Stanislaus v. Steorts*, 530 F.Supp. 72, 74 (N.D.Ill.1981).

In order to determine just when the 180-day limit begins to run, one looks first to the language of Section 706(e) of the Civil Rights Act of 1964: "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice *occurred....*" 42 U.S.C. § 2000e–5(e) (emphasis added). The Supreme Court has construed "occurred" to mean just that: "[t]he proper focus is upon the time of the *discriminatory acts,* not upon the time which the *consequences* of the acts become most painful." *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (emphasis by the court), quoting *Abrahamson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir.1979).

■ Applying the above to the facts of this case, it is clear that the allegedly discriminatory acts occurred either on October 28, 1980, when it was decided to hire four minority applicants and only one non-minority applicant, or sometime in November, 1980, when the actual hiring took place. Irrespective of which date is used, however, plaintiff had substantially exceeded the 180-day time limit when he filed his claim with the EEOC on July 7, 1981. See this court's opinion in *Battle v. Clark Equipment, Brown Trailer Division*, 524 F.Supp. 683, 686 (N.D.Ind.1981).

Notwithstanding the above, plaintiff argues that the alleged discriminatory act was ongoing, from its inception on October 28, 1980, to its "conclusion" in February of 1981, when one of the original four minority applicants was replaced by another minority applicant due to the former's failure to pass one of the subsequent screening examinations. Suffice it to say that this position finds no support in the case law.

Until the Supreme Court's decision in *Delaware State College v. Ricks, supra,* the general rule was that a discriminatory act was not final, i.e., the 180-day statute of limitations did not begin to run, until the employment position sought by the complainant had been filled. *Gates v. Georgia-Pacific Corp.*, 492 F.2d 292, 294–5 (9th Cir.1974). *Accord, see Dumas v. Town of Mt. Vernon, Ala.*, 612 F.2d 974, 978 n. 2 (5th Cir.1980); *Bethel v. Jefferson*, 589 F.2d 631, 636 (D.C.Cir.1978); *Egelston v. State Univ. College at Geneso*, 535 F.2d 752, 755 (2d Cir.1976). Irrespective of whether this case law is still valid for the above-stated proposition,[2] it is clear from the facts of this case that the *discretionary* acts of *selecting* and *hiring* four minority applicants were completed in November, 1980. The act of replacing one of these four minority members with a fifth minority applicant in February of 1981 was a purely ministerial function which did not act to toll the statute of limitations, as it was nothing more than the implementation of the selection and hiring decisions of October 28, 1980. Research by this court has disclosed no cases holding that such a purely ministerial act starts the rerunning of the statutory 180-day time limit. Accordingly, plaintiff's contention that his charge was timely filed with the EEOC is without merit, and must fail.

As his second line of defense to defendants' motion for summary judgment, plaintiff argues that, because defendants did not raise the 180-day statute of limitation defense during the course of the EEOC proceedings, they have waived it as an affirmative defense in this action. This position is also without merit.

At the outset it must be noted that this court is not sitting in appellate review of the administrative decision rendered by the EEOC in the underlying discrimination

---

**2.** A careful reading of *Delaware State College v. Ricks*, 449 U.S. at 255, 256, 101 S.Ct. at 502, 503, calls into serious question the continued viability of *Egelston v. State Univ. College at Geneso*, 535 F.2d 752 (2d Cir.1976) and those of its ilk.

charge. Rather, this court is sitting *de novo.*

■ Rule 8(c) of the F.R.Civ.P. requires that affirmative defenses be specifically raised in a responsive pleading prior to the filing of the answer. Statutes of limitation are specifically listed as affirmative defenses under F.R.Civ.P. 8(c). Affirmative defenses can be waived or equitably tolled. Generally, 5 Wright & Miller, Federal Practice and Procedure § 1278 at 339ff (1969).

■ In *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court specifically held that the timely filing of a charge with the EEOC is not a prerequisite to the district court's exercise of jurisdiction over a Title VII claim. 455 U.S. at 393, 102 S.Ct. at 1132. However, the Court made clear that a timely filing with the EEOC is tantamount to a statute of limitations, subject to waiver, estoppel, and equitable tolling. *Id.* Thus, it necessarily follows that, as a statute of limitations rather than a jurisdictional bar, 455 U.S. at 394, 102 S.Ct. at 1133, the specific pleading of the failure to file in a timely manner mandates the dismissal of the complaint. *See, generally, Tillman v. City of Milwaukee,* 715 F.2d 354 (7th Cir.1983); *Liberles v. County of Cook,* 709 F.2d 1122 (7th Cir. 1983).

Here, the defendants properly raised the issue of the plaintiff's failure to comply with the statutory 180-day time limit of 42 U.S.C. § 2000e–5(e) as an affirmative defense under F.R.Civ.P. 8(c). Because, as noted above, this court is not bound by the underlying administrative proceedings related to the filing of the discrimination charge with the EEOC (indeed, the EEOC proceedings form no part of this court's record herein), the defendants' decision not to raise the affirmative defense of the statute of limitations unless and until the plaintiff's charge gravitated to federal court cannot be construed as a waiver of said defense.

Finally, plaintiff argues that the defendants' "agent", Robert Potvin, told the plaintiff as late as January 1, 1981, that he would be hired[3] despite the October 28, 1980 decision to hire four minority applicants and only one non-minority applicant. Plaintiff insists that, because of this "promise", defendants are estopped from raising the statute of limitations as an affirmative defense, presumably on a theory of detrimental reliance.

■ Plaintiff's allegation is that he was not informed until February 1, 1981, by Mr. Potvin that he, the plaintiff, would not be hired. Mr. Potvin's testimony, as set forth in his deposition, contradicts this. Since there are only 156 days between February 1, 1981 and July 7, 1981, and such a promise if true, would render the statute of limitations subject to equitable tolling under *Zipes v. Trans World Airlines, Inc., supra,* a genuine issue of material fact exists. Construing the facts in a light most favorable to the non-movant plaintiff, it is apparent that summary judgment is inappropriate on the preliminary defense of the statute of limitations. Accordingly, this court must turn now to an examination of the merits of plaintiff's claim.

## II.

■ The moving party bears the burden of clearly establishing the absence of any genuine issues of fact material to judgment in his favor. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–61, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970). Even so, the non-moving party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial," in order to defeat the motion. F.R.Civ.P. 56(e). A careful examination of the complete file reveals that the plaintiff has failed to establish the existence of any disputed fact issues warranting the denial of defendants' motion, i.e., plaintiff has failed to come forward with anything to controvert the evidence proffered by the defend-

---

**3.** Mr. Potvin insists in his deposition at p. 37 that he only indicated plaintiff *might* be hired, i.e., Mr. Potvin "did not know."

ants regarding the alleged "impropriety" of their actions.

Analyses of reverse discrimination attacks on affirmative action plans generally proceed under one of two theories: Title VII or the Fourteenth Amendment.[4] At the risk of being accused of oversimplification, the *legality* of affirmative action plans under Title VII must be measured against the standards set forth in *United Steelworkers of America, AFL–CIO–CLC, v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), while the *constitutionality* of such plans under the Fourteenth Amendment (and, *a fortiori*, under 42 U.S.C. § 1983) must be measured against the criteria enunciated in *Regents of University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978).

■ In an extremely careful and well reasoned opinion that is almost on all fours with the case now before this court, the Court of Appeals for the Sixth Circuit outlined the distinctions between Title VII and Fourteenth Amendment analyses involving municipal affirmative action plans. *Bratton v. City of Detroit*, 704 F.2d 878 (6th Cir.), *as modified*, 712 F.2d 222 (1983). To survive scrutiny under Title VII, an affirmative action plan (1) must be aimed at breaking down prior patterns of segregation and racial hierarchy, (2) it must not "trammel" unnecessarily the interests of non-minority members, *viz.*, whites, and (3) it must be a purely temporary measure, "to end when the manifested racial imbalance no longer exist[s]." 704 F.2d at 883–84. An important corollary to the above is that a public employer adopting such an affirmative action plan will be insulated from Title VII liability. *Id.; Williams v. City of New Orleans*, 694 F.2d 987 (5th Cir.1982); *La Riviere v. EEOC*, 682 F.2d 1275, 1279 (9th Cir.1982); *Boston Chapter, NAACP v. Beecher*, 679 F.2d 965 (1st Cir.1982), *vacated on other grounds*, — U.S. —, 103 S.Ct. 2076, 76 L.Ed.2d 330 (1983).

■ On the other hand, constitutional analysis under the Fourteenth Amendment is stricter, i.e., the standard to be applied is one of "strict scrutiny." *Bratton*, 704 F.2d at 886, *citing Bakke*, 438 U.S. at 361–62, 98 S.Ct. at 2784. Specifically, there must be a showing that (1) some governmental interest is being served, and (2) the program is directed towards the achievement of that objective. *Bratton*, 704 F.2d at 885.

However, where as here the discrimination complained of is directed against those not "traditionally discriminated against," the words "strict scrutiny" take on a different shade of meaning:

> [A] case involving a claim of discrimination against members of the white majority is not a simple mirror image of a case involving claims of discrimination against minorities. One analysis is required when those for whose benefit the Constitution was amended or a statute enacted claim discrimination. A different analysis must be made when the claimants are not members of a class historically subjected to discrimination. When claims are brought by members of a group formerly subjected to discrimination the case moves with the grain of the Constitution and national policy. A suit which seeks to prevent public action designed to alleviate the effects of past discrimination moves against the grain....

*Detroit Police Officers' Association v. Young*, 608 F.2d 671, 697 (6th Cir.1979), *cert. denied*, 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981), as quoted in *Bratton, supra*, at 886.

Before addressing the factual merits of defendants' position, one final note: assuming from the above that the constitutional standard under *Bakke* is more exacting than that set forth in *Weber*, it follows that "the Title VII challenge ... is necessarily subsumed into [sic] that made here under the Fourteenth Amendment; what is valid under the latter will certainly pass muster

---

**4.** The analysis of claims proceed under 42 U.S.C. § 1983 is identical to that under the Fourteenth Amendment where affirmative action plans are at issue. *Bratton v. City of Detroit*, 704 F.2d 878, 883 n. 15 (6th Cir.) *as modi-* *fied*, 712 F.2d 222 (1983). Thus, and for the purposes of this case, whenever the words "Fourteenth Amendment" are used, 42 U.S.C. § 1983 may be substituted.

under Title VII." 704 F.2d at 887 (footnote omitted).

Turning now to an examination of the factual merits of defendants' position, it is clear that they are entitled to summary judgment.

The local government has an undeniably significant interest in mitigating adverse effects of discrimination. *Fullilove v. Klutznick,* 448 U.S. 448, 497, 100 S.Ct. 2758, 2784, 65 L.Ed.2d 902 (1980) (Powell, J., concurring). However, a caveat to the above is that:

> A direct showing of past intentional discrimination is not required to establish the existence of the interest.... It is sufficient if findings are made by a body with the competence to act in this area and a review of those findings reveals "a sound basis for concluding that minority under-representation is substantial and chronic, and that the handicap of past discrimination is impeding access [and promotion] of minorities." *Detroit Police Officers Association v. Young,* 608 F.2d at 694 (quoting *Bakke,* 438 U.S. at 362, 98 S.Ct. at 2784).

704 F.2d at 886 (footnote omitted).

■ A careful review of the uncontroverted pleadings discloses that the minority population of the City of South Bend exceeded 14% in 1970, and was 20.7% in 1980 (18.3% black, 2.4% hispanic). In 1980, however, the City of South Bend's Fire Department had barely 6% minority representation. Thus, and irrespective of the question whether there had ever been any overt or deliberate discrimination against minorities by the defendants, the decision of the Board of Public Safety of the City of South Bend on June 3, 1980, to implement an affirmative action program to redress this imbalance and bring the Fire Department's minority representation more closely into line with the City's population, was consistent with the holding of *Fullilove, supra.*

Turning now to the determination of whether the remedial measures employed

were and are reasonable, this court concludes that they are.

The City's Board of Public Safety adopted a plan of limited duration (five years) in which there are two different pools of applicants, one consisting of minority members, the other of non-minority members. Hiring needs were and are to be met by filling available employment slots with the most qualified applicants from each pool, with a numerical slant in favor of the minority pool's applicants until the Fire Department's racial composition is more in line with that of the City's general population.

The City's Board of Public Safety is "a body with the competence to act in this area," 704 F.2d at 886, being the administrative body legally responsible for the operation of the South Bend Fire Department. Ind.Code § 36–8–3–2.

■ A determination of "reasonableness" for purposes of ascertaining the constitutionality of affirmative action programs is not measured against the "reasonable man" test so familiar to students of tort law. Rather, determining whether the remedial measures employed are reasonable includes the following:

> an examination of whether any discrete group or individual is stigmatized by the program and whether racial classifications have been reasonably used in light of the program's objectives. *Regents of the University of California v. Bakke,* 438 U.S. at 372–76, 98 S.Ct. at 2790–92; *Fullilove v. Klutznick,* 448 U.S. at 518–19, 100 S.Ct. at 2795. If the affirmative action plan satisfies these criteria, it does not violate the equal protection clause of the Fourteenth Amendment. *Detroit Police Officers Association v. Young,* 608 F.2d at 694. Accord *United States v. City of Miami, Florida,* 614 F.2d 1322, 1338 (5th Cir.1980), *modified,* 664 F.2d 435 (1981) (en banc).

704 F.2d at 887.[5]

As noted above, an examination of the record compiled in this action in light of

---

**5.** This is not to say that affirmative action is without its serious detractors. *See,* e.g., that scathing attack on such policies in N. Glazer, *Affirmative Discrimination: Ethnic Inequality and Public Policy* (1975).

these standards reveals that the defendants' affirmative action plan is reasonable as a matter of law.

Because defendants' affirmative action program survives constitutional scrutiny, under which the Title VII legality claims are subsumed, there is an absence of any genuine issues of material fact now before this court. Accordingly, defendants' motion for summary judgment is hereby GRANTED in their favor, and against the plaintiff. CASE DISMISSED.