## VIRGIN ISLANDS DIVING SCHOOLS/SUPPLIES, INC., Plaintiff

v.

## TED L. DIXON, JANE L. THOMPSON–DIXON, and ST. THOMAS DIVING CLUB, Defendants

Civil No. 1046/1982

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

October 19, 1983

ANDREW L. CAPDEVILLE, ESQ., St. Thomas, V.I., *for plaintiff*

RHYS S. HODGE, ESQ., St. Thomas, V.I., *for defendants Dixon*

MEYERS, *Judge*

## MEMORANDUM OPINION

### I. INTRODUCTION

In this declaratory judgment action, plaintiff is seeking enforcement of a non-competition and non-disclosure employment contract against the defendants, its former employees.[1] The defendants contend, inter alia, that the restrictive clauses of the agreement are void and unenforceable as against public policy on the ground that they are unreasonable restraint on competition. For the reasons set forth below, the Court declares that the restrictive covenants are void and unenforceable.

### II. FACTS

Plaintiff is one of a limited number of businesses providing scuba diving instructions and scuba equipment and supplies in St. Thomas, United States Virgin Islands. On April 16, 1982, the defendants, Ted L. Dixon and Jane Thompson-Dixon, husband and wife, obtained employment with the plaintiff as diving instructors. On that date, and as a condition of their employment, each of the defendants knowingly and voluntarily executed a document entitled "Employment Contract", which provided in pertinent part that each defendant

> will not work for any diving company operating within St. Thomas, U.S. Virgin Islands for a period of:
> a. six (6) months, if I leave during or directly after the training period
> b. one (1) year, if I leave between the conclusion of the training period and prior to six months of employment
> c. two (2) years, if I leave after six months and prior to one year of employment
> d. four (4) years, if I leave after one year and before two years of employment

---

[1] Prior to the trial, defendant St. Thomas Diving Club was dismissed from this action.

e. five (5) years, if I leave after two or more years of employment.

Furthermore, I will not divulge any information about the operations, techniques, or policies used by the Virgin Islands Diving Schools, Inc., or Virgin Islands Diving Supplies, Inc.

I also agree that I will not open a diving company of my own or in partnership, whether open or silent, within St. Thomas, U.S. Virgin Islands, for the same period of time.

I thereby agree that I will not go into competition in any way with any phase of the Virgin Islands Diving Schools, Inc., or Virgin Islands Diving Supplies, Inc. operation. This includes diving classes, tours, repair of equipment, sales, rentals, etc.

Before defendant Ted Dixon moved to the Virgin Islands to accept employment, the plaintiff informed him of the non-competition and non-disclosure clauses in its contract which it required all its employees to execute. Defendant Ted Dixon discussed the validity of these restrictive clauses with his father, who is not an attorney. His father advised him that the clauses were probably unenforceable. Ostensibly, with that advice in mind, defendant Ted Dixon and his wife, Jane, executed the non-competition and non-disclosure agreement without any intention of complying with the terms of those provisions.

The defendants' duties while employed as diving instructors by the plaintiff included sales, tours, classes, repairing and maintaining diving equipments, assisting in upgrading systems and methods of the business, and any other duties assigned from time to time. Most of the plaintiff's business came from visiting cruise ship passengers. The defendants' contacts with these customers were not of a recurring nature due to the transiency of the customer relationship. Additionally, while the defendants knew that plaintiff had various contracts with the cruise ship lines, they were not privy to the terms and conditions of those contracts. Moreover, the defendants had no access to plaintiff's customer lists or books of accounts.

The defendants remained in the plaintiff's employ from April 16 until November 27, 1982, a period of more than six (6) months, but less than one (1) year, at which time they voluntarily terminated their employment relationship and thereby triggered the commencement of the two-year period of the non-competition and non-disclosure clauses of the contract.

On or about December 1, 1982, the defendants began new employment as diving instructors with St. Thomas Diving Club, one

of the plaintiff's business competitors. Shortly thereafter a promotional brochure comparing St. Thomas Diving Club with Virgin Islands Diving Schools, to the exclusion of other diving companies, with a prominent picture of defendant Ted Dixon appearing in one of its pages was circulated among various cruise ship lines. This type of promotional endeavor was the first of its kind and appeared only after the defendants left the plaintiff's employ and began working for St. Thomas Diving Club.

On December 20, 1982, the defendants co-authored a letter to the National Association of Underwater Instructors (N.A.U.I.),[2] one of the regulating and licensing bodies of the diving industry, complaining essentially about certain alleged infringements of N.A.U.I.'s published Standards and Procedures to which the plaintiff was obligated to respond. This, plaintiff alleged, violated the non-disclosure clause of the contract.

At the time of trial, defendant Ted Dixon had left the employ of St. Thomas Diving Club and is presently employed as a charter boat captain. Defendant Jane Dixon is still employed by St. Thomas Diving Club which has three branches—Bolongo Bay, Pineapple Beach, and Villa Olga. She presently holds the position of instructor/manager of the Bolongo Bay branch.

## III. DISCUSSION

### A. Non-Competition Agreement

While it is true that a promise by an employee not to compete with his employer is ancillary to a valid employment contract, Restatement (Second) Contracts § 188(2)(b), it is also equally true that the law disfavors agreements which restrain employment. Id. § 188, comment b; American Hot Rod Association v. Carrier, 500 F.2d 1269, 1277 (4th Cir. 1974); Associated Surgeons, P.A. v. Watwood, 326 So.2d 721, 722–23 (Ala. 1976). Accordingly, a non-competition employment contract may be held void on the ground that it is an unreasonable restraint on competition and unenforceable as against public policy if either the restraint is greater than necessary to protect the promisee's legitimate business interest, or, alternatively, the promisee's need is outweighed by the hardship on the promisor and the likely injury to the public. Restatement (Second) of Contracts § 188(1).[3]

---

[2] Defendants were also certified as N.A.U.I. instructors.

[3] Because the Court is of the opinion that the non-competition employment contract in the case sub judice is void and unenforceable as against public policy on the

■ With respect to the legal principle set forth in Restatement (Second) of Contracts, § 188(1)(a), comment b to that section states in pertinent part that:

> [i]n the case of a post-employment restraint, . . . [such a restraint, to be legally enforceable] *must* usually be justified on the ground that the employer has a legitimate interest in restraining the employee from appropriating valuable trade information and customer relationships to which he has had access in the course of his employment. (Emphasis added.)

■■ In addition to valuable trade secrets and customer relationships, case law makes it abundantly clear that such post-employment restraints will be enforced only where unique services are involved. E. L. Cornwell & Co. v. Gutherlet, 429 F.2d 527 (4th Cir. 1970); Orkin Exterminating, Inc. v. Weaver, 521 S.W.2d 69 (Ark. 1975). A trade secret has been defined as "a secret formula, method, or device that gives one an advantage over competitors." Orkin, supra, at 72.

In the case at bar, plaintiff Virgin Islands Diving Schools presented no evidence of any trade secrets which the defendants obtained that is worthy of protection. In fact, the only evidence in this regard related to the plaintiff's method of handling large numbers of its customers in its store and loading them into safari buses in a short span of time. While these things may be intriguing, they certainly do not reach such a level to be classified as a trade secret. Similarly, plaintiff presented no credible evidence that it has a legitimate interest in restraining the Defendants from appropriating customer relationships. The evidence adduced at trial shows that plaintiff's customers are transient tourists who come primarily from visiting cruise ships. The Court finds that the defendants' contacts with these customers were not of a recurring nature; therefore, the defendants were in no position to develop an ongoing relationship with these customers so as to lure them to their new place of

---

ground that it is an unreasonable restraint on competition, in that the restraint is greater than necessary to protect plaintiff Virgin Islands Diving Schools' legitimate business interest, it is unnecessary for the Court to analyze subsection (b) of section 188(1) of the Restatement (Second) of Contracts with respect to the promisee's need being outweighed by the hardship on the promisor and the likely injury to the public. Reference to that subsection is made only if the Court finds that the restrain in subsection (a) is *not* greater than is necessary to protect the promisee's legitimate business interest. Id. at comment c. Therefore, the Court's disposition of this case is based solely on its application of subsection (a) to the facts of the instant case.

employment, St. Thomas Diving Club. In a similar vein, plaintiff also failed to show that defendants provided unique services to it which warranted such post-employment restrictions. The defendants started their employment with plaintiff as trained, certified assistant diving instructors. Notwithstanding the fact that they subsequently became certified instructors while in plaintiff's employ, such a position and the services they performed are not unique as any individual with similar qualifications could readily perform the same tasks.

Moreover, of great significance is the fact that the non-competition employment contract in question was contained in a standardized printed form prepared by the plaintiff which had to be signed by "all" employees regardless of their employment capacity. The contract, then, was one of adhesion since it was prepared by a party with excessive bargaining power, that is, the plaintiff, who presented it to the defendants for signature on a "take it or leave it basis." Brokers Title Co. Inc. v. St. Paul Fire & Marine Ins. Co., 610 F.2d 1174, 1179 (3rd Cir. 1979). Accord, Standard Oil Co. v. Perkins, 347 F.2d 379, 383 n.5 (9th Cir. 1965). Accordingly, all ambiguities in the contract should be construed against the plaintiff since it was the one to prepare the contract. Id.

The non-competition agreement precluded an employee from working for any diving company in St. Thomas for a period of six (6) months if the employee left plaintiff's *employ* during the first ten (10) days of employment; one (1) year if the employee left anytime during the eleventh day and the sixth month of employment; two (2) years if the employee left anytime after the sixth month and prior to one year; four (4) years, if the employee left after one year but prior to two years; and five years, if the employee left anytime after two years of employment. From the foregoing, it seems evident that the plaintiff's non-competition employment "contract [was] not merely directed against unfair competition but against competition of any kind on the part of its former employees." Orkin, supra, 521 S.W.2d at 71. See Sybron, Corp. v. Wetzel, 61 App. Div. 2d 697, 403 N.Y.S.2d 931 (1978). While plaintiff asserted during the course of the trial that it felt inhibited in discussing certain matters with or in revealing certain confidential information to its employees, plaintiff's bare assertions, without more, is insufficient to hold the non-competition agreement valid. Indeed, Restatement (Second) Contracts, § 188, comment b, cautions that "it is often difficult to distinguish between such information and normal skills of the trade,

and preventing [the] use of one may well prevent or inhibit [the] use of the other." However, the Court notes that at no time, during the course of the trial, did the plaintiff inform the Court of the type of information it felt that it could not confidentially tell its diving instructors or, for that matter, any of its other employees. The plaintiff's failure to offer proof on the issue persisted notwithstanding defendants' suggestion that plaintiff make its offer to the Court in camera.

■■ The Court concludes, therefore, that the offer of proof was not made because there was no confidential information revealed to the defendants. This conclusion is further supported by the evidence to the effect that while the defendants knew that plaintiff had various contracts with the various cruise lines, they were not privy to the terms and conditions of those contracts. Moreover, the defendants had no access to plaintiff's customer lists or books of accounts, even though they occasionally performed sales-related tasks for the plaintiff. Such tasks were limited merely to writing up sales receipts and making change for the customers. These things can hardly be classified as confidential information. Instead, they fit neatly into the category of "normal skills of the trade." Additionally, plaintiff's president admitted that its business has been operating for the past six months without disruption during which time the plaintiff allegedly has been unable to confide in its employees. The sum total of all these factors leads the Court to conclude that the restraint involved here is greater than is needed to protect the plaintiff's legitimate business interest. As one court noted:

An employer has no right to unnecessarily interfere with the employee's following any trade or calling for which he is fitted and from which he may earn his livelihood and he cannot preclude him from exercising the skill and general knowledge he has acquired or increased through experience or even instructions while in the employment. (Citations omitted.)

Smith, Batchelder & Rugg v. Foster, 406 A.2d 1310, 1313 (N.H. 1979). Furthermore, the plaintiff should be well aware of the fact that:

our economy is premised on the competition engendered by the uninhibited flow of services, talents, and ideas. Therefore, no restrictions should fetter an employee's right to apply to his own best advantage the skills and knowledge acquired by the overall experience of his previous employment. This includes those

techniques which are but "skillful variations of general processes known to the particular trade." (Citations omitted.)

Reed, Roberts Associates, Inc. v. Strauman, 40 N.Y.2d 303, 307, 353 N.E.2d 590, 593 (1976).

Plaintiff's reliance on Williamson v. Hess, 16 V.I. 284 (Terr. Ct. 1979), is misplaced. That case involved two professional veterinary doctors who bargained at-arms-length for the restrictive covenant as a part of an extensive employment contract. The court there found that the defendant became privy to all of the plaintiff's business operations, including clients and client lists. Furthermore, the defendant in that case had full access to plaintiff's practice techniques. Therefore, the court there held that the restriction was reasonable and not greater than needed to protect the plaintiff's legitimate business interest. Such is not the case here.

Similarly, plaintiff's reliance on Modern Controls, Inc. v. Andreadakis, 578 F.2d 1264 (8th Cir. 1978), is also misplaced. It is true that the Court in that case held inter alia that confidential business information was exposed to the defendants, and that while such information did not rise to the level of trade secrets, it nonetheless was protectable. However, as stated earlier, plaintiff failed to prove that the information to which the defendants were exposed was confidential. Further, the evidence adduced at trial does not support plaintiff's contentions as it failed to meet its burden of proof.

## B. *Non-Disclosure Agreement*

With respect to the non-disclosure agreement in plaintiff's standardized contract form, the plaintiff contends that the letter written to N.A.U.I., one of the regulating and licensing bodies of the diving industry, constituted a violation of defendants' promise not to divulge such information. The letter in question was allegedly written by the defendants as N.A.U.I. instructors "out of concern for the safety of the participants who have taken or shall take [the plaintiff's] certification and/or resort courses." The evidence showed that certified instructors such as the defendants are obligated to N.A.U.I., the certifying agency, to report violations of its standards and regulations. Moreover, some of the defendants' complaints were substantiated by the evidence adduced at trial. For example, the plaintiff admitted that one of the defendants' signatures was forged on a document. Additionally, a letter from Mr. Walt Hendrick, Sr., National Training Director of N.A.U.I., indicated that some standards were in fact violated and that the plaintiff had improperly

relied on the standards or waivers of Professional Association of Diving Instructors (P.A.D.I.) and Scuba Schools International (S.S.I.), two other diving regulators.

█ Contrary to plaintiff's assertions, the Court is of the opinion that the defendants' communications to N.A.U.I. were authorized since they not only had an ethical, but also a legal, obligation to report any and all violations of the published standards since the safety of the individuals they served may have been in jeopardy. Plaintiff's persistent assertion that these communications amounted to a disclosure of information about its business operations gives the Court the impression that the plaintiff wanted to silence its employees even with respect to violations of the various safety standards. This the plaintiff cannot do as it is against public policy to insist on such contractual agreements. See Restatement (Second) Contracts § 178.

Since the Court concludes that the defendants' disclosure to N.A.U.I. were authorized, the plaintiff has failed to substantiate its claim for damages because the only damages alleged was for the time expended in answering the N.A.U.I. inquiry into the alleged standards violations. Moreover, such responses are or should be an integral part of plaintiff's business operations. Furthermore, the responses were not the product of any breach by the defendants of the non-disclosure agreement. Absent such a breach, no damages are recoverable. See Restatement (Second) Contracts, § 236 and comment (a) thereunder.

### C. *Defendants' Bad Faith*

It is evident from all the evidence at trial that neither of the defendants intended to honor the non-competition agreement which they signed before commencing their employment with the plaintiff. In fact, defendant Ted Dixon even discussed the validity of the restrictive clauses with his father who advised him that they were probably unenforceable. However, while the defendants' assumption, in this particular instance, was correct, they should be mindful of the fact that non-competition covenants are not per se unenforceable.

█ As further evidence of defendants' bad faith, the Court notes that upon terminating their employment with the plaintiff, the defendants, almost immediately, took up similar employment with the St. Thomas Diving Club, one of the plaintiff's business competitors. To add insult to injury, a prominent picture of defendant Ted

Dixon appeared in a promotional brochure which made a general comparison of St. Thomas Diving Club with the plaintiff. Notwithstanding the fact that the aforementioned actions of the defendants are less than honorable, their bad faith, nonetheless, is immaterial to the primary issue before this Court, i.e., whether the restraint is greater than is necessary to protect the plaintiff's legitimate business interest. The Court has answered that question in the affirmative, and defendants' good or bad faith does not affect the results reached here. However, although defendants are the prevailing party, the Court, because of their bad faith, will not award them their costs and attorney's fees, pursuant to 5 V.I.C. § 541(b), for maintaining this action.

In light of the Court's disposition of the preceding issues, it is unnecessary to consider the defendants' alternative arguments of overbreadth and lack of consideration and mutuality.

## IV. CONCLUSION

In light of the foregoing, the Court declares that the non-competition and non-disclosure employment contract between the parties is void and unenforceable as against public policy on the ground that it is an unreasonable restraint on competition.

## DECLARATORY JUDGMENT

Based on the foregoing Memorandum Opinion, it is hereby

DECLARED that the non-competition and non-disclosure employment contract between the parties is VOID AND UNENFORCEABLE as against public policy on the ground that it is an unreasonable restraint on competition; and it is further

ORDERED that each party bears its own costs and attorney's fees.