Louis L. ROSENBERG and The Cherry Pike Corporation, Plaintiffs,

v.

CLEARY, GOTTLIEB, STEEN AND HAMILTON, et al., Defendants.

No. 84 Civ. 3974 (RWS).

United States District Court, S.D. New York.

Nov. 19, 1984.

Lindenbaum & Young, P.C., Brooklyn, N.Y., for plaintiffs; Jack L. Glasser, Lawrence, N.Y., of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, pro se; George Weisz, New York City, of counsel.

## OPINION

SWEET, District Judge.

Cleary, Gottlieb, Steen and Hamilton ("Cleary Gottlieb"), a prominent and well-known law firm and a defendant to this action, has moved under Rule 12(b)6 of the Fed.R.Civ.P. to dismiss the complaint as to it and for attorney's fees and costs. Plaintiffs Louis Rosenberg and Cherry Pike Corporation (collectively "Cherry Pike") have cross-moved for leave to amend their complaint. The complaint, alleging antitrust violations as a basis for federal jurisdiction, arises out of the development and construction of a Pathmark Supermarket with an adjacent parking facility in lower Manhattan. For the reasons stated below, both Cherry Pike's motion to amend its complaint and Cleary Gottlieb's motion to dismiss will be granted and Cleary Gottlieb's motion for attorney's fees will be denied.

**The Facts**

The pleadings and motion papers present the following facts and allegations. Cherry Pike, the owner of a parcel of land located at the northeast corner of Pike Slip and Cherry Street in Manhattan, constructed a 42,233 square foot supermarket with an adjacent 199-car parking facility on its land. Shortly after the construction of the foundation of the supermarket, a series of law suits were instituted by various of the defendants to this action (collectively with Cleary Gottlieb, "the defendants") seeking

to enjoin construction of the supermarket project (the "state court actions").[1] In each state court action some of the plaintiffs, described by Cherry Pike as "competing supermarket interests" (Amended Complaint, ¶ 31), were represented by the law firm of Cleary Gottlieb. Certain actions involved special permits relating to the parking facility, and none was successful in enjoining construction.

Cherry Pike and its president, Louis Rosenberg, now allege that the state court actions and other acts of the defendants including attendance at local Community Board, Planning Commission and Board of Estimate meetings to render objections to the granting of a special permit, constituted a conspiracy by the defendants to restrain trade in violation of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1, and the Clayton Antitrust Act, 15 U.S.C. § 15. Although the amended complaint contains no specific allegations that the supermarket, which is leased from Cherry Pike by Supermarkets General Corporation, the parent company of Pathmark, opened late because of these actions, Cherry Pike does allege that the defendants' actions caused them injury in the form of lost rent and higher material and building charges and seeks $100,000,000 in damages.

## Motion to Amend Complaint

Preliminarily, Cherry Pike's motion to amend its complaint will be granted. As the Supreme Court has noted, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the oppressing party by virtue of the allowance of the amendment, etc.— the leave sought should, as the rules require, be 'fairly given.' " *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Cherry Pike's proposed amendment clarifies allegations

made in the original complaint, and granting the motion does not prejudice the defendants. The motion is therefore granted.

## Antitrust Standing

For the purposes of Cleary Gottlieb's motion, the facts alleged in Cherry Pike's proposed amended complaint are taken as true. However, although the amended complaint clarifies several allegations made in the original complaint, it fails to withstand a motion to dismiss because Cherry Pike lacks standing under section 4 of the Clayton Act to bring this action.

Section 4 of the Clayton Act provides: Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15.

Antitrust standing requires a different evaluation than that undertaken for constitutional standing. *Associated General Contractors of California, Inc. v. California State Board of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *Crimpers Promotions, Inc. v. Home Boy Office, Inc.*, 724 F.2d 290 (2d Cir.1983), *cert. denied sub. nom. H.B.O., Inc. v. Crimpers Promotions, Inc.*, —— U.S. ——, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984). In a recent opinion, the Supreme Court established limitations on the availability of the section 4 remedy to individuals claiming injury under the Clayton Act. *Associated General Carpenters, supra*, 459 U.S. 519, 103 S.Ct. 897. The Court set out some of the factors that a court should evaluate in determining anti-

---

**1.** The lawsuits relating to this action are: *Matter of Regent Associates v. The Planning Commission of the City of New York, et al.,* Index No. 10755/83; *271 West 72nd Street, Inc. v. The Planning Commission of the City of New York, et* al., Index No. 11414/83; *Karp, et al v. The City Planning Commission of the City of New York, et* al., Index No. 10105/84; and *Sierra Club of New York, et al. v. The Board of Estimate of the City of New York, et al.,* Index No. 12469/84.

trust standing: (1) whether there is a causal connection between the antitrust violation and the plaintiff's injury; (2) whether the defendant intended to cause the harm; (3) whether the injury was of the type sought to be prevented by the antitrust laws; (4) the directness or indirectness of the asserted injury; (5) the possibility that denial would "leave a significant antitrust violation undetected or unremedied"; and (6) the speculative nature of the plaintiff's claim of damages. *Associated General Contractors, supra,* 459 U.S. at 535–543, 103 S.Ct. at 907–911.

Cherry Pike's amended complaint does meet several of the Court's requirements. While the damages claimed may be considered speculative in nature, the complaint alleges both a causal connection between the defendant's actions and its claimed injury and an improper motive. It fails, however, to allege either an injury within the scope of the antitrust laws or a sufficiently direct injury.

■■■■ The antitrust laws are intended to "protect[ ] the economic freedom of participants in the relevant market." *Associated General Contractors, supra,* at 535, 103 S.Ct. at 907. Cherry Pike does not claim to be a participant in the grocery market. It claims that it was "never in the retail grocery business," (Plaintiff's Memorandum at 18) and in its papers alleges instead that it was injured as a participant in the construction and real estate market. Assuming that the defendants' actions were undertaken in violation of the antitrust laws, however, the relevant market which was restrained was the retail grocery business. The facts alleged in the complaint do not support the conclusion that the defendants, repeatedly described as "competing supermarkets," were operating to restrain trade in the construction market. Instead, the amended complaint, fairly read, alleges the existence of a conspiracy, if any, among various members of the retail grocery industry to prevent the creation of additional and powerful competition in the supermarket business.

Because Cherry Pike is not a direct participant in the retail grocery market, it is not entitled to the protections of section 4 of the Clayton Act. Despite Cherry Pike's efforts to distinguish the facts, this case falls squarely within the Sixth Circuit's holding in *Southaven Land Co. v. Malone & Hyde, Inc.,* 715 F.2d 1079 (6th Cir.1983). In *Southaven,* the owner and lessor of a commercial property leased to a grocery store charged the defendant, a competing grocery, with violating the antitrust laws. The Court held that because Southaven was "neither a consumer or participant in the relevant market," *id.* at 1087, and its injury was more remote than its tenant, the supermarket, it lacked antitrust standing under the principles of *Associated General Contractors.* In the case at hand, both supermarket consumers and Cherry Pike's tenant are in a position to allege a more direct injury than Cherry Pike, and allowing a suit by Cherry Pike would permit a duplicative recovery. Its lack of actual involvement in the retail grocery market makes it an inappropriate complainant of an antitrust violation in that market.

Cherry Pike attempts to avoid the consequences of its lack of participation in the retail grocery market by alleging instead that the relevant economic market is the construction business. It asserts that the antitrust injury is "injury to plaintiff as a builder, which is separate and distinct from any injury that Pathmark may sustain." (Plaintiff's Memorandum at 17). While Cherry Pike's alleged injuries as a builder and lessor may be unique, however, they are no more than "a tangential by-product" of an antitrust violation in the grocery market. As the Supreme Court has held:

Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages from the injury to his business or property.

*Blue Shield of Virginia v. McCready,* 457 U.S. at 477. No matter how causal a relationship may exist between the alleged violation and injury, the defendants' actions were not undertaken to interfere with the economic freedom of partici-

**646**

pants in the construction business. Any injury Cherry Pike may have suffered does not fall within the scope of the antitrust laws. No matter how real or severe the injury might be, the remedy provided by § 4 of the Clayton Act was intended to correct the direct results of illegal restraint of an economic market on participants in that market, not the indirect results of such restraint on non-participants.

In any event, even if the amended complaint contained allegations that could support a conclusion that the construction business is the relevant economic market, Cherry Pike has completely failed to identify or delineate the market in its complaint. Moreover, it has not even alleged a market-wide restraint of trade. As in *Associated General Contractors,* "[t]he allegedly unlawful conduct involves predatory behavior directed at 'certain' parties, rather than a claim that output has been curtailed or prices enhanced throughout an entire competitive market." 459 U.S. at 539 n. 40, 103 S.Ct. at 909 n. 40. Because the amended complaint fails to delineate either the relevant market or the injury done to that market, it fails to allege an injury that should be redressed by the antitrust laws. *See Larry R. George Sales Co. v. Cool Attic Corp.,* 587 F.2d 266, 273 (5th Cir. 1979); *Heart Disease Research Foundation v. General Motors Corp.,* 463 F.2d 98, 100 (2d Cir.1972).

**Attorney's Fees**

Cleary Gottlieb has also moved for an order granting it costs and attorney's fees under Fed.R.Civ.P. 11. Because the facts of this case do not meet the requirements of Rule 11, this motion is denied.

Because Cherry Pike does not have standing to bring this case, it is unnecessary to address Cleary Gottlieb's other contentions as to Cherry Pike's failure to state a claim or to overcome the immunity provided by the *Noerr-Pennington* doctrine.

For the above stated reasons, Cherry Pike's motion to amend its complaint is granted. Cleary Gottlieb's motion to dismiss is granted with prejudice and its motion for attorney's fees is denied.

**IT IS SO ORDERED.**