SUNNY ISLE SHOPPING CENTER,
INC., a Virgin Islands Corporation,
Plaintiff,

v.

XTRA SUPER FOOD CENTERS, INC.,
d/b/a Pueblo, a Delaware Corporation,
and Kmart Corporation, Defendants.

No. CIV.1998–154.

District Court, Virgin Islands,
D. St. Croix.

Dec. 20, 2002.

A. Jeffrey Weiss, St. Thomas, VI, for plaintiff.

John K. Dema, St. Croix, VI, for defendant Pueblo.

Andrew C. Simpson, St. Croix, VI, for defendant Kmart.

## MEMORANDUM

MOORE, District Judge.

Defendant Xtra Super Food Centers, Inc. ["defendant" or "Pueblo"] moves to dismiss parts of the complaint of plaintiff Sunny Isle Shopping Center, Inc. ["plaintiff" or "Sunny Isle"] and for summary judgment. Sunny Isle opposes defendant's motion. For the reasons set forth below, I will grant Pueblo's motion to dismiss Count I of Sunny Isle's complaint, but I will deny defendant's motion for summary judgment in regard to Counts II and V.[1] In addition, I will exercise my discretion to modify the scope of the area covered by the restrictive covenant.

## I. FACTUAL BACKGROUND

Plaintiff owns and operates the Sunny Isle Shopping Center as well as other commercial properties on St. Croix. Defendant is a successor tenant at the shopping center, where it operates a supermarket. Originally, Sunny Isle entered into a lease with the Grand Union Company ["Grand Union"] on or about October 17, 1969 to operate a supermarket at the shopping center.[2] The lease negotiated with Grand Union contained a restrictive covenant at paragraph 10, which provided that

> [d]uring the term of this lease and any extension thereof the Landlord shall not use nor permit to be used any other part

---

1. Pueblo made no motion to dismiss Sunny Isle's remaining claims, namely Count III (waiver) and Count IV (estoppel).

2. The initial term of the lease was 21 years, but permitted Grand Union to extend the lease term four times, with each extension having a term of five years.

of the shopping center or any other property directly or indirectly owned or controlled by the Landlord within a radius of five miles of the shopping center for the sale of food for consumption off premises, except (1) bakery, kiosks, hamburger stands, and snack bars located within the shopping center .... If this covenant be violated, the Tenant, without liability of forfeiture of its terms, may withhold payment of any or all installments of rent accruing during such violation. The total amount of such rents thus withheld shall be deemed to be liquidated damages ....

On November 30, 1995, Grand Union assigned its lease to Pueblo with the consent of Sunny Isle. That same day the terms of the lease, including paragraph 10, were extended until January 31, 2012.

Some time in 1997, Pueblo learned that Sunny Isle intended to lease space at the shopping center to the Kmart Corporation ["Kmart"].[3] Knowing that Kmart traditionally sells groceries and believing that such conduct would violate the terms of its agreement with Sunny Isle, Pueblo notified Sunny Isle of its intent to enforce the restrictive covenant. Notwithstanding this announcement, Sunny Isle proceeded to negotiate a lease of the space to Kmart on December 4, 1997, which permitted Kmart to sell food for consumption off-premises despite Pueblo's exclusive arrangement.[4]

On June 17, 1998, Sunny Isle filed suit in this Court for a declaration that the restrictive covenant violates the subsequently enacted Virgin Islands Antimonopoly Act (Count I), that the restrictive covenant is unenforceable (Count II), that Pueblo has waived any defenses by failing to enforce paragraph 10 before 1998 (Count III), that Pueblo is estopped from enforcing the restrictive covenant because of its failure to object to prior violations of paragraph 10 (Count IV), and that the lease's provision enabling Pueblo to withhold rent is a penalty (Count V). After Kmart began operations in September 1998, Pueblo discovered that Kmart was in fact using its store to sell groceries and began to withhold rent as provided by paragraph 10. Sunny Isle responded on September 10th by filing a notice to evict Pueblo for failure to pay rent. Pueblo immediately sought a temporary restraining order to prevent its eviction, which this Court granted on October 8, 1999. Sunny Isle and Pueblo later stipulated to several extensions of the temporary restraining order through November 15, 2000.

During the pendency of this suit, Kmart voluntarily agreed to cease selling most of its food products. Upon learning that Kmart had ceased selling a number of the prohibited items, Pueblo began to pay rent again from November of 2000 until August of 2002, at which time it now argues that Kmart has continued to violate the terms of the restrictive covenant by selling snack items and beverages. Sunny Isle disputes Pueblo's interpretation of paragraph 10 of the lease on whether these items violated the prohibition on the sale of foods for

---

**3.** The space Sunny Isle intended to lease to Kmart was originally used by F.W. Woolworth Company ["Woolworth"]. Woolworth had entered into a lease with Sunny Isle on September 15, 1969 to operate a "department store business." According to Sunny Isle, Woolworth, in addition to operating its premises as a department store, marketed and sold "an extension line of food products for consumption off premises." Woolworth terminated its lease with Sunny Isle in 1997.

**4.** Paragraph 29 of the Sunny Isle–Kmart lease provides in part: "Landlord acknowledges that [Kmart] intends to sell food for consumption off premises, and hereby agrees notwithstanding the Pueblo Exclusive, [Kmart] shall have the right to sell food for consumption off premises." Sunny Isle also agreed to defend at its own cost Kmart's right to sell such foods.

consumption off-premises and responded on August 7, 2002, by giving Pueblo another notice to quit the leased premises for failure to pay rent. Pueblo thereafter moved to enforce the October 9, 1999 temporary restraining order halting any eviction. While that motion was pending, Sunny Isle filed an action for forcible entry and detainer in the Territorial Court to evict Pueblo, which Pueblo has removed to this Court. As further proceedings are pending in that separate action, Pueblo's motion to enforce the October 9, 1999 temporary restraining order is not ripe for decision. This Court has diversity jurisdiction under section 22(a) of the Revised Organic Act of 1954[5] and 28 U.S.C. § 1332.

## II. DISCUSSION

### A. Sunny Isle Has No Standing to Bring Claims Under the Virgin Islands Antimonopoly Act

■ Pueblo moves to dismiss Count I of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Sunny Isle lacks standing to sue under the Virgin Islands Antimonopoly Act, 11 V.I.C. §§ 1501–1518. In considering defendant's motion to dismiss under Rule 12(b)(6), the Court "may dismiss [the] complaint if it appears certain the plaintiff cannot prove any set of facts in support of its claims which would entitle it to relief." *See Bostic v. AT & T of the Virgin Islands,* 166 F.Supp.2d 350, 354 (D.Vi.2001) (internal quotations omitted); *see also Julien v. Committee of Bar Examiners,* 34 V.I. 281, 286, 923 F.Supp. 707, 713 (D.Vi.1996); FED. R. CIV. P. 12(b)(6). The Court accepts as true all well-pled factual allegations, drawing all reasonable inferences in the plaintiff's fa-

vor. *See Bostic,* 166 F.Supp.2d at 354; *Julien,* 34 V.I. at 286–87, 923 F.Supp. at 713.

The viability of Count I centers on whether Sunny Isle has standing to bring an antitrust claim against Pueblo. Pueblo argues that Sunny Isle has no standing because it is not a competitor of Pueblo and, thus, its injury is not the type of injury antitrust laws were designed to prevent. *See* 11 V.I.C. § 1503(1) ("Every person shall be deemed to have committed a violation of this chapter who shall: Make any contract with, or engage in any combination or conspiracy with, any other person who is, or but for a prior agreement would be, a competitor of such person."); *see also Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 113, 107 S.Ct. 484, 93 L.Ed.2d 427 (1996) ("[A] private plaintiff must allege threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'"). Sunny Isle counters that this competitor requirement is only limited to section 1503(1) and that its injury is covered by section 1503(2), which gives it standing to pursue this antitrust claim. *See* 11 V.I.C. § 1503(2) ("Every person shall be deemed to have committed a violation of this chapter who shall: By Contract, combination, or conspiracy with one or more other persons unreasonably restrain trade or commerce."). The language of section 1503(2) on its face appears to give Sunny Isle standing to bring this action under section 1507 of the Virgin Islands Antimonopoly Act. *See* 11 V.I.C. § 1507(2) ("Any person who has been injured in his business or property, or is threatened with such injury, by a violation of section 1503 ... may maintain an action in the District Court for

---

**5.** 48 U.S.C. § 1612(a). The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2001), *reprinted in* V.I. Code Ann. 73–177, Historical Docu-

ments, Organic Acts, and U.S. Constitution (1995 & Supp.2001) (preceding V.I. Code Ann. tit. 1).

damages, or for an injunction, or both, against any person who has committed such violation."). My inquiry does not end here, however, as I must look to the interpretation of federal antitrust law to see whether federal courts would find that Sunny Isle has standing to sue. *See id.* § 1518 ("When the language of this chapter is the same or similar to the language of a Federal Antitrust Law, the District Court in constructing this chapter shall follow the construction given to the Federal Law by the Federal Courts."); *see also Sea Air Shuttle Corp. v. Virgin Islands Port Auth.*, 782 F.Supp. 1070, 1077 (D.Vi. 1991) (noting the Virgin Islands Antimonopoly Law "evidences the intention that [it] be applied in a manner consistent with the Sherman Act and other federal antitrust claims."). Therefore, to decide whether Sunny Isle has standing to pursue its territorial antitrust claim, I must determine whether it would have standing to pursue its claim under federal law.

Similar to our section 1507(2), section 4 of the Clayton Act provides authority for a private antitrust cause of action in an antitrust suit. *See* 15 U.S.C. § 15 ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . ."). Despite this broad language, the "courts have been virtually unanimous in concluding that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263 n. 14, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972) (collecting cases); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 274 (3d Cir.1999) ("Antitrust standing, however, is narrower than the statute's wording indicates."). Realizing that a liberal interpretation of section 4 of the Clayton Act

could afford relief to all persons whose injuries are causally related to an antitrust violation . . . [,] courts have impressed a standing doctrine so as to confine the availability of section 4 relief only to those individuals whose protection is the fundamental purpose of the antitrust laws.

*Cromar Co. v. Nuclear Materials & Equip. Corp.*, 543 F.2d 501, 505 (3d Cir. 1976) (quoting *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 125 (9th Cir.1973)).

The Third Circuit Court of Appeals has adopted the following approach in determining a party's standing to bring antitrust suits. Accordingly, a court must look to:

(1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause the harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

*In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165–66 (3d Cir. 1993); *see also Cromar*, 543 F.2d at 506 (noting that "courts must look to, among other factors, the nature of the industry in which the alleged antitrust violation exists, the relationship of the plaintiff to the alleged violator, and the alleged effect of the antitrust violation upon the plaintiff."). A review of these factors confirms that Sunny Isle does not have standing to bring its antitrust claims.

First, plaintiff's claimed injuries were not caused solely by any anti-competitive actions of Pueblo. Even though Pueblo is seeking to enforce the restrictive covenant, Sunny Isle's actions are just as significant a cause of the injuries about which it complains. Plaintiff obviously knew of the terms of the restrictive covenant before it leased space to K–Mart, yet Sunny Isle rented the space to K–Mart anyway. Moreover, Sunny Isle had freely agreed to this restrictive covenant when it first negotiated the lease with Grand Union. Thus, even if Pueblo's conduct in trying to enforce this restrictive covenant has been a cause in fact of Sunny Isle's injury, I cannot find that Pueblo's actions are the legal or proximate cause of plaintiff's claimed injury. *See Acme Mkts., Inc. v. Wharton Hardware & Supply Corp.*, 890 F.Supp. 1230, 1237 (D.N.J.1995) (finding that defendant grocery store's enforcement of restrictive covenant was not the proximate cause of harm to commercial landlord, but that the likely proximate cause of the injury stemmed from prior anchor tenant's decision to quit the premises).

■ Second, there is no evidence that Pueblo intended to harm Sunny Isle. I can find no evidence of "retaliatory and bad faith" conduct by Pueblo in its letter of April 27, 1998 to Sunny Isle notifying Sunny Isle of Pueblo's intent to enforce the restrictive covenant in the event that Kmart opened a store in the defendant's shopping center and sold groceries. As numerous courts before me have opined, restrictive covenants are not per se unlawful, provided they are reasonable in scope and economically justified. *See id.* at 1242 (noting that courts will uphold restrictive covenants so long as they are reasonable in scope and do not unduly burden trade); *see also Liautaud v. Liautaud*, 221 F.3d 981, 987 (7th Cir.2000) ("[T]he complete bar on competition needs to be reasonably related to the promisee's interest in protecting his own business."); *Static Control*

*Components, Inc. v. Darkprint Imaging, Inc.*, 135 F.Supp.2d 722, 729 (M.D.N.C. 2001) (noting that restrictive covenants are not per se invalid). It is evident, given its size and location, that St. Croix may have problems attracting businesses to the island. One way Crucian entrepreneurs can attract desirable businesses to the island is through restrictive covenants as economic inducements. *See Acme Mkts.*, 890 F.Supp. at 1242. Accordingly, Pueblo's act of seeking to enforce its restrictive covenant—a covenant freely agreed to by Sunny Isle—was a reasonable course of action designed to protect its business interests rather than an intent to harm plaintiff. Moreover, I note that the April 27th letter evidences that Pueblo did not object to Kmart opening a store on plaintiff's premises, but merely reiterated its intent to enforce the restrictive covenant if Kmart attempted to sell food at this location. Again, this fact demonstrates Pueblo's desire to protect its own business interests and not some evil plan to harm Sunny Isle.

■ Third, Sunny Isle is not the most direct victim. Many courts have refused to grant standing to commercial landlords who bring antitrust claims against their tenants. *See id.* at 1230 (refusing to grant landlord standing in suit to declare restrictive covenant unenforceable); *see also Serfecz v. Jewel Food Stores*, 67 F.3d 591 (7th Cir.1995) (shopping mall owners did not have standing to bring antitrust claim against grocery store tenant); *Southaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1087 (6th Cir.1983) (lessor of commercial premises did not have antitrust standing to challenge alleged violation of section 2 of the Sherman Act in the retail grocery industry); *Rosenberg v. Cleary, Gottlieb, Steen & Hamilton*, 598 F.Supp. 642, 645–46 (S.D.N.Y.1984) (holding that the owner of a supermarket development did not have standing under sec-

tion 4 of the Clayton Act to challenge restraint of trade in retail grocery business). Courts generally look to the competitors and consumers in the relevant market when determining the proper parties to an antitrust action. *See Associated General Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 539, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). The relevant market here is the grocery retail market. As Sunny Isle is not involved in this market in any capacity, it is not a proper party. *See id.* at 538, 103 S.Ct. 897 (noting that Congress enacted the Sherman Act to protect "the economic freedom of participants in the relevant market").[6]

■ Fourth and finally, the injury suffered by Sunny Isle is not the type Congress intended "to redress in providing a private remedy for violations of the antitrust laws." *Blue Shield of Va. v. McCready,* 457 U.S. 465, 483, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). A party may demonstrate that its injury falls within the protective realm of antitrust laws if it can show that its injury is "inextricably intertwined with the injury the [defendant] sought to inflict on ... the ... [relevant] market." *Id.* at 484, 102 S.Ct. 2540. As noted above, the relevant market here is the retail grocery market, in which Sunny Isle has suffered no injury. Sunny Isle creatively argues that it has been injured in the retail shopping center market. Basically, Sunny Isle argues that the restrictive covenant covering a five mile radius unnecessarily restricts its ability to lease commercial space. Assuming without deciding that this restrictive covenant may have affected Sunny Isle's ability to lease commercial real estate and thus caused it harm, such injury would be "no more than

a 'tangential by-product' of an antitrust violation in the grocery market," assuming such a violation exists here. *See Rosenberg,* 598 F.Supp. at 645 (rejecting plaintiff's attempt to create a second market); *see also McCready,* 457 U.S. at 477, 102 S.Ct. 2540 ("Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages from the injury to his business or property."). Therefore, I find that Sunny Isle does not have standing to bring its antitrust claims and I must dismiss Count I of its complaint.

## B. Genuine Issues of Material Fact Preclude Summary Judgment in Pueblo's Favor

■ Pueblo has also moved for summary judgment on Counts II (unenforceable restrictive covenant) and V (unenforceability of penalty provision) of plaintiff's complaint. Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Sharpe v. West Indian Co.,* 118 F.Supp.2d 646, 648 (D.Vi.2000). The nonmoving party may not rest on mere allegations or denials, but must establish by specific facts that there is a genuine issue for trial from which a reasonable juror could find for the nonmovant. *See Saldana v. Kmart Corp.,* 42 V.I. 358, 360–61, 84 F.Supp.2d 629, 631–32 (D.Vi.1999), *aff'd in part and rev'd in part,* 260 F.3d 228 (3d Cir.2001). Only evidence admissible at trial shall be considered and the Court must draw all reasonable inferences therefrom in favor of the nonmovant.

---

**6.** Sunny Isle argues that it alone has the ability and desire to bring this antitrust action. In particular, it notes that K–Mart has been unwilling to enter into the fray and consumers cannot realistically be expected to bring an action. Whether or not either of these are true, they are beside the point.

*See id.* A review of this matter reveals that genuine issues of material fact still remain, thus precluding a grant of summary judgment in Pueblo's favor.

First, the language of the lease pertaining to the prohibition of the sale of "food for consumption off-premises" is ambiguous. Despite defendant's claim that this is a standard industry term, I have no evidence before me at this time to support such a claim. As there is still a question of fact regarding what exactly the lease prohibits, Count II is not ripe for decision.

Likewise, there is a material question of fact whether Pueblo has actually suffered any loss from Kmart's activities. Liquidated damages are typically used when the amount fixed by contract approximates actual loss and proof of loss is difficult to determine. *See* RESTATEMENT (SECOND) OF CONTRACTS § 356.[7] As the evidence before me is unclear whether Pueblo has suffered any financial losses since Kmart's arrival or whether any such losses can be attributed to Kmart's sales of food products, I am unable to determine at this time whether the rent-withholding provision challenged in Count V is enforceable.

## C. Modifying Scope of Restrictive Covenant

■ Throughout its pleadings, Pueblo has requested that I limit my review of the geographic area covered by the restrictive covenant to the plaintiff's shopping center. Sunny Isle, at oral argument, countered that the law in this jurisdiction prohibits the re-writing of contracts, citing the Territorial Court's opinion in *Virgin Islands Diving Schools/Supplies, Inc. v. Dixon,* 20 V.I. 54 (Terr.Ct.1983). Despite plaintiff's claims to the contrary, the law in this jurisdiction does not bar the modification of restrictive covenants and I will therefore amend the lease provision to make it reasonably apply to the facts of this case.

Although section 7.2 of the Restatement (Second) of Property, Landlord & Tenant ["Restatement"] recognizes the validity of non-competition agreements and provides a tenant remedies for a landlord's breach of its promise not to lease space to a competitor of the tenant,[8] it acknowledges instances where all or part of the restrictive covenant may be invalid. In those situations, however, the Restatement permits, where possible, the reformation of the agreement to carry out the intent of the parties and to protect the tenant's interests against competition. *See* RESTATEMENT (SECOND) OF PROPERTY, LANDLORD & TENANT, § 7.2 cmt. b. For example, comment b of section 7.2 provides that

> [t]he promise of the landlord may be invalid because the restriction on competition is to go on for too long a period of time, or because it relates to too broad an area, or because it restricts the landlord from entering businesses that do not compete with the tenant. In those cases, *if the promise is severable and hence valid* for a shorter period of time, or *in relation to a less broad area,* or in regard to competition with certain businesses, and such validity gives reasonable protection to the tenant against competition, the severed invalid portion is disregarded in applying the rule of this section. In this situation, no one is engaging in a competing business as long as there is performance within the revised limits of the promise.

---

7. Absent local law to the contrary, the restatements provide the substantive law of the Virgin Islands. *See* 1 V.I.C. § 4.

8. RESTATEMENT (SECOND) OF PROPERTY, LANDLORD & TENANT, § 7.2 (noting that a tenant may terminate the lease upon the landlord's breach and recover damages or continue the lease and obtain equitable and legal relief).

*See id.* (emphasis added). Thus, the Restatement clearly acknowledges a court's ability to amend the terms of a restrictive covenant. Whether or not the Territorial Court chose to reform the contract in *Dixon* is neither binding on this Court nor dispositive of the issue.

Moreover, I note that the Restatement's approach is in line with what other courts have done when faced with restrictive covenants. *See Unihealth v. U.S. Healthcare,* 14 F.Supp.2d 623, 639 (D.N.J.1998) (noting the right of court's to "fashion an equitable remedy by modifying" a "restrictive covenant"); *Hillard v. Medtronic, Inc.,* 910 F.Supp. 173, 177 (M.D.Pa.1995) (noting that Pennsylvania law allows its courts to reform and enforce restrictive covenants). In particular, the First Circuit Court of Appeals has detailed three approaches a court has at its disposal when dealing with potentially unreasonable restrictive covenants. One method, the "all or nothing" approach, is to void the restrictive covenant in its entirety if any provision of the agreement is unenforceable. *See Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.,* 968 F.2d 1463, 1469 (1st Cir.1992) Another method, known as the "blue pencil" approach, permits a court to excise the unreasonable provision from an agreement and enforce the restrictive covenant so long as the covenant remains grammatically coherent. *See id.* The final approach, known as "partial enforcement," enables the court to modify the terms of the restrictive covenant to make the agreement reasonable unless "the circumstances indicate bad faith or deliberate overreaching on the part of the [parties to the contract]." *See id.*[9]

■ I reject the "all or nothing" approach and find that I can "blue pencil" paragraph 10 to render it reasonable in scope and yet still grammatically coherent. As noted above, paragraph 10 of the lease provides in part:

> During the term of this lease and any extension thereof the *Landlord shall not use nor permit to be used any other part of the shopping center* or *any other property* directly or indirectly owned or controlled by the Landlord *within a radius of five miles* of the shopping center for the sale of food for consumption off premises[.]

The agreement thus first prohibits Sunny Isle from permitting any of its tenants to sell food for off-premises consumption within the shopping center. It then goes on to prohibit such sales on any of Sunny Isle's properties within five miles of the shopping center. These two clauses are separate and severable. I find that the prohibition on allowing other tenants to sell food for off-premises consumption within the Sunny Isle Shopping Center itself does not unreasonably restrict competition. *See J.C. Penney Co. v. Giant Eagle, Inc.,* 813 F.Supp. 360 (W.D.Pa. 1992), *aff'd,* 995 F.2d 217 (3d Cir.1993), *permanent inj. aff'd,* 85 F.3d 120 (3d Cir. 1996) Since this is the only area covered by paragraph 10 that is factually before me, I need not reach the reasonableness of the restriction as extended to the five-mile area outside the shopping center. Applying my blue pencil to accommodate the facts of this case, paragraph 10 reads as follows:

> During the term of this lease and any extension thereof the Landlord shall not use nor permit to be used any other part of the shopping center for the sale of food for consumption off premises.

As this amended language is grammatically coherent and gives reasonable protec-

---

**9.** The Restatement has acknowledged these three approaches in the Reporter's Note to Section 7.2. *See id.* at 256–58.

tion to Pueblo against competition as contemplated by the parties at the time the lease was executed, I will uphold the validity of the restrictive covenant as confined to the Sunny Isle Shopping Center.

## III.  CONCLUSION

Sunny Isle has no standing to bring its antitrust claim because it is neither a competitor nor consumer in the relevant market.  Therefore, I will dismiss Count I of plaintiff's complaint.  Counts II and V, however, will remain as genuine issues of material fact exist.  Finally, I will limit the scope of paragraph 10 of the lease to the Sunny Isle Shopping Center itself.