**THE PEOPLE, Plaintiff**

v.

**JOHN MARTIN, Defendant**

District Court of the Virgin Islands

Christiansted Sub-Judicial District
St. Croix

May 24, 1928

WILLIAMS, *Judge*

On the 26th day of April, 1928, the Government Attorney filed, in open Court, a paper the body of which is as follows: "There being no sufficient cause to believe the above named John Martin guilty of an offense I

recommend his discharge." This is the method prescribed by the Code in cases where the Government Attorney thinks the prosecution could not be successfully made (section 5, chapter 4, Title V, of the Code [1921; 5 V.I.C. § 3501 note]). Accompanying said motion were certain papers transmitted to the Government Attorney from the Police Court of Christiansted. From those papers the following facts are revealed:

It appears that there was a hearing on February 17th, 1928, at which the defendant admitted being the father of the illegitimate child, Jerome Martin, the mother being Antonetta Joseph. The defendant, Martin, denies the right of the mother to collect from him, on account of said illegitimate child, because on the 17th day of April, 1918, he had entered into an agreement with the complainant, before the Police Court, for the support of the child until it was fourteen years of age, and, as the child has now attained that age he is absolved from further liability.

██ Under the Danish ordinance under which the proceedings were had in 1918, the complainant would have no further right upon him, although the Superior Authority would, as shown by Placard of December 6, 1839, concerning a changed provision in the laws about maintenance to illegitimate children, as follows:

"1. The obligation which a father has to contribute towards the maintenance of his illegitimate child until it has completed its 10th year, in accordance with the Ordinance of October 14th, 1763, shall in the future continue until it has attained its 14th year, thus, however, that the contribution with regard to the last four years can by Resolution of the Superior Authorities be reduced to less than the amount originally fixed for the first 10 years, as ordinarily the child then can begin to earn something for himself.

"2. The extension of this duty shall, however, not be applicable to the children who were already born at the time the present Ordinance is promulgated.

"3. In the same way as the Ordinance of October 14th, 1763 and subsequent ordinances, which by particular compulsory means *compel* the father to assist the mother in the maintenance of their jointly begotten children, it does not abolish the duty which nature dictates that the father under certain circumstances (i.e. when the mother dies) and in so far as his means will allow, to a greater extent provide for his illegitimate child, neither can the aforesaid provisions of the law, which only refer to the duty under ordinary circumstances resting on the father of the child, and which are subject to the special compulsory means of enforcement, make any limitation to the extended obligation which otherwise can be incumbent upon him."

See also letter from the Government under date August 15th, 1815*, supported by decisions of the Supreme Court of April 26th, 1911█, where it is said that the mother cannot renounce support for the illegitimate child against the interest of the child and the community, and, according to section 11 of Ordinance of 16th October, 1813, no agreement binds the Government irrevocably. Any arrangements made are always subject to change in accordance with the necessity of the child or the interest of the community, and in accordance with the circumstances of the case. However, the above Placard makes it clear that it is not retrospective, but prospective, in its operation.

█ ▬ █ The present local law, found in chapter 38, Title V, of the Code (1921; 16 V.I.C. §§ 291-303), does not expressly say that it is not retrospective in its operation. In considering this element of the case it must be borne in mind also that by the terms of said chapter 38 "all proceedings by virtue of this chapter shall be considered in the nature of a criminal action," and, therefore, in one view it might have to be considered from an ex post facto standpoint. However, it will be unnecessary to discuss it as an ex post facto law, but

merely retrospective, in view of the ground on which I am deciding the case.

"Bills of attainder and ex post facto laws are both specifically prohibited by the federal constitution. They are both included in the category of retrospective laws. A bill of attainder or an ex post facto law is always retrospective; but not all retrospective laws are bills of attainder or ex post facto laws. The latter terms, according to the familiar doctrine of constitutional law, relate only to the imposition of pains or penalties or the conduct of criminal trials." Black on Interpretation of Laws, Second Edition, 382. Retrospective laws relate other than to criminal cases. That authority continues, at page 384, to say: "It will therefore be seen that the question of a retrospective interpretation and the question of constitutionality are not coincident. The primary question is as to the meaning and intention of the legislature." Quoting from Underwood v. Lilly, 10 Serg. & R. (Pa.) 97, 101, Black, at page 387, says: "Retrospective laws being in their nature odious, it ought never to be presumed the legislature intended to pass them where the words will admit of any other meaning." And, again, quoting Cooley's Constitutional Limitations 370, Black, at page 388, says: "Legislation of this character is exceedingly liable to abuse, and it is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively."

■ ■ The rule against retrospective laws is not only of great antiquity and dignity in the English law, but it is also recognized in foreign systems. It was part of the Imperial Roman law. In Black's Constitutional Prohibitions, section 180, it is stated, that — "Where the retroactive character of a statute is clearly indicated on its face, and although it is free from con-

145

stitutional objections, yet it will always be subjected to the most circumscribing construction that can possibly be made consistent with the avowed intention of the legislature. Hence, to a statute explicitly retroactive to a certain extent and for a certain purpose, the courts will not, by construction, give a retroactive operation to any greater extent or for any other purpose." And it was said by a learned English judge, that — "It seems to me that even in construing an act which is to a certain extent retrospective, and in construing a section which is to a certain extent retrospective, we ought nevertheless to bear in mind that maxim as applicable whenever we reach the line at which the words of the section cease to be plain. That is a necessary and logical corollary of the general proposition that you ought not to give a larger retrospective power to a section, even in an act which is to some extent intended to be retrospective, than you can plainly see the legislature meant."

It may be remarked, however, at this juncture, that while there are vested rights in the substantive law, the rules of law, there are no vested rights in the adjective law, the law of procedure. The procedure may always be changed so long as it does not affect the rules of law. In Words and Phrases, First Edition, page 5632, this subject is dilated further upon as follows: "The word 'proceeding' both in its popular use and in its technical application, has a definite meaning. It means in all cases the performance of an act, and is wholly distinct from any consideration of an abstract right. A proceeding in a civil action is an act necessary to be done in order to attain a given end. It is a prescribed mode of action for carrying into effect a legal right. Rich v. Husson, 11 N.Y. Leg. Obs. 119, 121; Fielden v. Lahens, 22 N.Y. Super. Ct. (9 Bosw.) 436, 444. And, so far from involving any consideration

146

or determination of the right, presupposes its existence. The proceeding follows the right. Rich v. Husson, 8 N.Y. Super. Ct. (1 Duer) 617, 620; Id., 11 N.Y. Leg. Obs. 119, 121; Hopewell v. State, 54 N.E. 127, 129, 22 Ind. App. 489; In re Mace (N.Y.) 4 Redf. Sur. 325, 327. The rules by which proceedings are governed are rules of procedure; those by which rights are established and defined, rules of law. It is the law which gives a right to costs and fixes their amount. It is procedure which declares when and by whom the costs to which a party has a previous title shall be adjusted or taxed, and when and by whose direction a judgment in his favor shall be entered. Fargo v. Helmer, 43 Hun (N.Y.) 17, 19."

An examination of said chapter 38 (of Title V, 1921 Code; 16 V.I.C. §§ 291-303) will reveal the fact that it deals both with substantive and adjective law, but we are in the instant matter obliged to deal only with the substantive law. While that chapter does not expressly state, as heretofore said, that it is to be prospective in operation, an examination of the first section thereof will seem to clearly imply that the whole chapter, so far as substantive law was concerned, was to be considered as of a prospective nature, for it there says: "On complaint made to any Police Judge by any woman who is a resident of the District, *who shall hereafter be delivered of an illegitimate child,* born alive or being pregnant with a child which, if born alive, may be an illegitimate child, accusing on oath any person of being the father of said child, the said Judge shall take such accusation in writing," and so on. Sections 2 to 8, both inclusive, point out the procedure of the substantive law to be applied to, apparently, cases "hereafter" instituted. It may be remarked, without so deciding, that section 9, at least, being a matter of procedure in connection with the enforcement of the obligations

147

to support an illegitimate child, is of present force. It would have been much better to have stated, as did the old Danish ordinance above quoted, definitely, that it was to be considered retrospective or prospective, but such is not essential if its character could be gathered from its context.

It is my opinion that said chapter 38 (supra) was intended to apply to cases occurring after its enactment. There is nothing in the ordinance to indicate that the legislative body intended to in any wise interfere with the substantive law then existing, as to cases then pending or adjudicated, while there is a clear indication that at least certain features of the law were to have a prospective operation. From it, coupled with the aforesaid general principles of law, it may be fair to assume, in the interest of stability, that they did not intend to affect former actions existing or judgments rendered before its passage.

If this conclusion is correct, then paragraph 3 of Placard of December 6th, 1839, supra, is still extant. How far the instant case would come within it, if at all, I do not know, but, in view of the above conclusion, if any right to further support of said illegitimate child exists, the remedy will be under said section (paragraph) 3. As it is rather apparent that the matter has not been considered, from this angle, by the Government Attorney, the matter is remanded to him for further consideration, in the light of that section (paragraph).

I do not mean to imply, by anything that is said above, that the law could not be made retroactive in the aspect here under consideration, or otherwise; indeed it would seem to be that the Government has always retained a reserved power to deal with such cases in the interest of the child, for the protection of the community. "Sufficient unto the day is the evil thereof," hence this matter is left open for future determination when the proper case arises.

148

Case remanded to the Government Attorney for reasons above set forth.