**CARTERET SAVINGS BANK, F.A., formerly known as Carteret Savings and Loan Association, F.A., a federal savings and loan association organized under the laws of the United States of America, Plaintiff**

**v.**

**PELICAN BEACH PROPERTIES, LTD., DeJONGH ASSOCIATES, a/k/a ROBERT C. DeJONGH, PARHIL CO., INC., now known as WILLIAM GRAULICH and ASSOCIATES, INC., a New Jersey corporation, WILLIAM GRAULICH, III and JOAN GRAULICH, husband and wife, and TERRITORY OF THE VIRGIN ISLANDS, Defendants**

Civil No. 89-296

District Court of the Virgin Islands

Div. of St. Thomas and St. John

August 13, 1992

JAMES L. HYMES, ESQ., Charlotte Amalie, St. Thomas, V.I., *for plaintiff*

BIRCH, DEJONGH AND HINDELS, ESQS., St. Thomas, V.I., *for defendants Pelican Beach Properties, Ltd.; William Graulich and Associates; William Graulich, III; and Joan Graulich*

ROSALIE BALLENTINE, ESQ., Attorney General, St. Thomas, V.I., *for defendant Virgin Islands*

GILES, *United States District Judge, Sitting by Designation*

## MEMORANDUM

This is an action for debt and foreclosure of real property instituted by Carteret Savings Bank ("Carteret"). Carteret alleges that defendants defaulted on a loan and Carteret seeks a judgment of foreclosure on the property which secured the loan. Carteret has moved for summary judgment on the issue of defendants' indebtedness on the Promissory Note, which evidences the loan, alleging that principles of res judicata and collateral estoppel bar the defendants from relitigating their indebtedness on the Note.[1]

The essential facts are undisputed. On January 25, 1986, in St. Thomas, the United States Virgin Islands, Carteret Savings Bank issued a loan in the amount of $2,154,620.59 to William Graulich, Pelican Beach Properties, Ltd. ("Pelican Beach"), and Parhil Company[2] (the "Borrowers"). To secure the loan, the Borrowers executed a Promissory Note (the "Virgin Island Note" or the "Note") for the said sum on January 25, 1986. Pursuant to the terms of the Note, the Borrowers agreed to pay interest upon the principal at the rate of 1% per annum above Carteret's prime rate, payable the first day of each month beginning February 1, 1986. The entire balance was due on March 19, 1986. This Note was replaced on March 27, 1986 with a second Note executed by the Borrowers extending the maturity date of the January 25, 1986 Note to March 19, 1987.

---

[1] Although there are several defendants in this action, as used in this opinion, the term defendants will only refer to William and Joan Graulich, Pelican Beach Properties, Inc., and William Graulich and Associates. The other defendant who has submitted papers in this action, DeJongh Associates, will be referred to as "DeJongh".

[2] Parhil Company, Inc. has since merged into William Graulich and Associates, Inc., and is referred to as the "Company" for ease of reference. Plaintiff has not moved for summary judgment against the debtor Company since it is protected by a stay under bankruptcy law. See Plaintiff's Memorandum of Law in Reply to the Opposition to Summary Judgment and in Opposition to Defendants' Motion to Dismiss Complaint at 6.

The terms were otherwise identical. On December 28, 1987, Carteret canceled the second Note. On December 22, 1987, the Borrowers executed an Amended and Restated Note in the amount of $2,154,620.59, which extended the maturity date for the loan until April 1, 1988 and required payment of the principal at the rate of 1.5% per annum above Carteret's prime rate.

As security for the payment of the January 25, 1986 Promissory Note, defendant Pelican Beach executed a Mortgage in New Jersey in favor of Carteret. The Mortgage was recorded in St. Thomas. Carteret and Pelican Beach executed several extensions of this Mortgage, one dated April 3, 1986, another dated August 17, 1987, and a third dated January 25, 1988. The latter extended the term of the Mortgage to April 1, 1988. The Mortgage's terms were otherwise unchanged by the extensions. The loan was also secured by a second mortgage lien on real property located in Parsippany Morris County, New Jersey.

Defendants' payments on the Virgin Island Note were consistently delinquent and on April 1, 1988, when the Virgin Island Amended and Restated Note matured, defendants defaulted on the loan.

As of mid-November 1988, the Borrowers had yet to repay the Virgin Island Note and still had significant amount outstanding on two other loans from Carteret.[3] In addition, the Borrowers (excluding Pelican Beach) were faced with a ending foreclosure action by another lender on property for which Carteret held a second mortgage lien. In an obvious effort to stave off the foreclosure action and to avoid the looming financial quandary, defendants offered Carteret $2 million to release their second mortgage lien on the property which was the subject of the unrelated foreclosure action (the Parsippany property),[4] lift the default on the Virgin Island Note, redeem their defaults on the two New Jersey Notes and postpone the maturity dates on the Virgin Island Note as well as the two New Jersey Notes until April 30, 1989. As part of the agreement, Carteret required defendants William and Joan Graulich to

---

[3] On December 9, 1983, Carteret issued two loans to the defendants William and Joan Graulich and the Company. The first in the amount of $4,750,000.00 and the second in the amount of $5,750,000.00. The defendants executed separate Mortgage Notes for each loan offering two different properties as security.

[4] Apparently, a loan from Crestmont Savings Bank was contingent upon Carteret's release of its secondary lien on the Parsippany property.

guarantee 100% of the balance due upon the Virgin Island Note and the two New Jersey Notes. The parties reached an agreement and executed a letter agreement dated November 17, 1988 (the "Letter Agreement").

Since the payment of the $2 million in connection with the Letter Agreement, defendants failed to make additional payments on the Virgin Island Note in violation of the terms stated in the Note itself and the Letter Agreement. The Borrowers were again in default on the Virgin Island Note.

On March 8, 1989, Carteret served the defendant Borrowers with notices of default, and notices to cure and honor the Guarantees. None of the defendants redeemed the defaults or honored their guarantees. In accordance with the terms of the Notes, Carteret elected that the entire balances of the principal indebtedness, unpaid interest and advances of the Notes become immediately due and payable.

On October 5, 1989, Carteret filed an action in this court seeking to foreclose upon the Virgin Island Mortgage which defendant Pelican Beach had executed to secure the Virgin Island Note. In addition, the complaint seeks judgment against the Borrowers due to their default on the Virgin Island Note and against the Graulich defendants on their guarantees of said Note. In its complaint, Carteret alleged, inter alia, that defendant borrowers defaulted under the terms of the Mortgage and Note.

On August 15, 1989, Carteret filed an action (the "Guaranty suit" or "Guaranty action") in the Law Division, Morris County New Jersey, against William Graulich, Joan Graulich and the Company to recover upon Guarantees of payment (as amended by the Letter Agreement) by which the defendants guaranteed the Mortgage Note at issue in this action. In its complaint, Carteret alleged, inter alia, that the defendants had dishonored their Guarantees of Payment of the Virgin Island Note. Defendant Pelican Beach was not a party to the Guaranty action.

On September 14, 1990, the Morris County New Jersey Superior Court issued judgment in the Guaranty suit in favor of indebtedness owed upon the Virgin Island Note (and two New Jersey Notes), dismissing defendants' Affirmative Defenses, counterclaims and Third Party complaint with prejudice and awarding Carteret $13,620,346.78, with interest at $2,295.28 per day.

## DISCUSSION

By its motion for summary judgment, Carteret contends that judgment must be entered in its favor due to the res judicata and collateral estoppel effects of the New Jersey Superior Court's Final Order and Judgment in the Guaranty suit.

### A. *Collateral Estoppel*

■ Essentially, the doctrine of collateral estoppel bars relitigation of questions "distinctly put in issue and directly determined adversely to the party against which the estoppel is asserted". New Jersey-Philadelphia Presbystery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education, 654 F.2d 868, 876 (3d Cir. 1981) (citing City of Plainfield v. Public Service Gas and Electric, 82 N.J. 245, 257–58, 412 A.2d 759, 756–66 (1990)).

Plaintiff notes that proof of indebtedness is a necessary element of both a foreclosure action and a guaranty action and therefore argues that facts essential to establishing a claim for foreclosure were already established in the Guaranty suit against the Graulich defendants. Plaintiff thus argues that defendants are collaterally estopped from relitigating the issue of their indebtedness.

■ Carteret's recovery upon the defendants' guarantees required proof of the amount due from the debtors.[5] Here William Graulich, the Company and Pelican Beach were co-borrowers on the Virgin Island Note which was one of three Notes at issue in the Guaranty suit. The issue of defendants' indebtedness upon the Virgin Island Note was distinctly put in issue and "directly determined" adversely to the defendants. Hence, the doctrine of collateral estoppel bars defendants from relitigating the indebtedness issue.

■ Carteret next contends that defendants' affirmative defenses and proposed counterclaims are barred by the doctrine of res judicata since they are virtually identical to those dismissed with prejudice by the final Order and Judgment of the Morris County New Jersey Superior Court. This court agrees. The doctrine of res judicata precludes relitigation of all defenses to liability that were available to the defendants in the previous action, regardless of whether they were asserted. See Sports Factory Inc. v. Chanoff,

---

[5] Carteret proved defendants' indebtedness upon the Virgin Island Note in the amount of $893,121.46.

586 F. Supp. 342, 347 (E.D. Pa. 1984). The Morris County Court's final Order dismissing defendants' affirmative defenses and counterclaims bars defendants from relitigating those issues previously raised and those which could have been raised in the Guaranty action.

## B. *Privity*

█ Res judicata also precludes a person in privity to a party to a prior action from relitigating the cause of action or issue previously adjudicated. Janowiak v. Corporate City of South Bend, 576 F. Supp. 1461 (1983). A person is in privity when a close or significant relationship exists between the parties. Privity also exist if the non-participating party's interest is represented by, or is derivative of, the parties in the original litigation. See Seaman v. Bell Telephone Co. of Pa., 576 F. Supp. 1458, 1461 (W.D. Pa. 1983), aff'd 740 F.2d 958 (3d Cir. 1984); Latham v. Wells Fargo Bank, 896 F.2d 979. Although Pelican Beach was not a party to the Guaranty action, plaintiff argues that it is nevertheless bound by the final Order and Judgment of the New Jersey Superior Court since it is in privity with the judgment debtors, the Graulich defendants. This court agrees.

█ Here, the subject Note was executed by Pelican Beach, William Graulich, and the Company, the Mortgage was executed by Pelican, and its payment guaranteed by Pelican Beach's sole owners, William and Joan Graulich. The Graulich defendants' interest in the Guaranty suit was identical to that of Pelican in this action. One law firm represents Pelican Beach and the Graulich defendants in this litigation and Pelican Beach's "of counsel" represented William and Joan Graulich in the Guaranty suit. More significantly, the Graulich defendants and Pelican Beach filed one Answer and one set of Affirmative Defenses which as previously noted are virtually identical to those in the Guaranty suit. Any benefit or loss accruing to William Graulich in the Guaranty suit bore a direct effect on Pelican Beach, the co-maker of the Note. The interests shared by the defendants in both litigations were so closely aligned that a suit against the Graulich defendants was tantamount to a suit against Pelican Beach. For these reasons, this court concludes that Pelican Beach was in privity with the Graulich defendants and is therefore bound by the Final Order and Judgment of the New Jersey Superior Court.

## C. Defendants' Contentions

 Defendants contend that the instant Complaint should be dismissed and that Pelican Beach's entire indebtedness should be discharged because plaintiffs failed to join Pelican Beach in the New Jersey Guaranty suit in violation of the New Jersey Courts' mandatory joinder rules.[6] Defendants' assertions that any claims against Pelican Beach are precluded under New Jersey's entire controversy doctrine are without merit since the District Court of the Virgin Islands is not bound to follow New Jersey Rules of Court. Moreover, New Jersey Superior Court would not have been unable to assert jurisdiction over Pelican Beach, a Virgin Islands corporation, since it lacked minimum contacts in the state and its sole property was in the Virgin Islands. As previously noted, this court is not bound to follow New Jersey's Rules of Court, but even if it were, it would decline to read New Jersey's entire controversy doctrine so expansively as to preclude litigation in a situation such as this where jurisdiction, and therefore joinder, could not be obtained against a party.[7]

 To avoid the preclusive effect of the New Jersey Superior Court's final Order and Judgment, defendants argue that they have appealed that decision. This argument is unavailing. It is well settled that a final judgment retains all of its res judicata effect pending decision of the appeal. See Webb v. Voirol, 773 F.2d 208, 211 (8th Cir. 1985); Commercial Union Assurance Co. v. Pucci, 523 F. Supp. 1310 (E.D. Pa. 1981). 1B James W. Moore, et al., Moore's Federal Practice ¶ 0.416[3] (2d ed. 1988). Thus, defendants' appeal from the Morris County court's decision does not affect the finality of that judgment for purposes of res judicata or collateral estoppel.

 In a further attempt to avoid the application of collateral estoppel and res judicata, defendants contend that the Morris County final Order and Judgment should be ignored because it is "inherently unreliable". This Court makes no finding on the reliability of the earlier decision but merely notes that with respect to its preclusive effect it is irrelevant whether the earlier decision is erroneous. "A final valid judgment . . . no matter how erroneous . . .

---

[6] See 4:30A of the New Jersey Court Rules entitled "Entire Controversy Doctrine".

[7] In any event, the New Jersey Supreme Court has noted that the doctrine is not a hard and fast rule. See Cogdell v. Hospital Center at Orange, 116 N.J. 27 (1989) (mandatory joinder rule is not unbounded).

until properly set aside has a binding effect . . . in all the nation's tribunals." 1B James W. Moore, et al., Moore's Federal Practice ¶ 0.405[4.-11] (2d ed. 1988).

D. *Priority of Liens*

Also at issue in this case is a dispute concerning the relative priority of the liens held by Carteret and defendant DeJongh Associates ("DeJongh") on the property which is the subject of this foreclosure action. DeJongh contends that Carteret failed to perfect a valid mortgage lien upon the subject property and that, as a result of this defect, its lien has been subordinated to that of DeJongh, which was perfected four years after Carteret recorded its Mortgage and the extensions thereto.[8]

Carteret responds by arguing that DeJongh's contention is based upon its misinterpretation of Virgin Islands and New Jersey Law. Carteret maintains that it has in fact complied with the essential requirements of the New Jersey recording statute, which controls, and that its recorded mortgage therefore retains its priority.

DeJongh claims that Carteret's mortgage was not in recordable form since it was not executed in the presence of two witnesses as required by Title 28 V.I.C. § 42(a). Title 28 V.I.C. § 42 provides that:

> (a) Deeds executed within the Virgin Islands of land or any interest in lands therein shall be executed in the presence of two witnesses . . .
>
> (b) Deeds executed in any State of the United States or in any foreign country may be executed according to the laws of each state or country and the execution there of may be acknowledged as provided in Chapter 5 of this Title.[9]

---

[8] Carteret recorded its lien on the subject property on February 28, 1986 and subsequently recorded an extension of the Mortgage on April 28, 1986 and a further extension on February 19, 1988. See Plaintiff's Brief in Opposition to DeJongh Associates Motion for Summary Judgment at 1.

[9] See Chapter 5, Acknowledgment of Instruments. Title 28 V.I.C. sec. 83 states in relevant part:

The acknowledgment of any instrument may be made without the Virgin Islands but within the United States and within the jurisdiction of the officer, before—

(5) any person authorized by the laws of such State to take acknowledgments.

In the instant case, the acknowledgment was made in New Jersey before a notary public as authorized by state law.

DeJongh argues that § 42(b), which would otherwise allow New Jersey law to govern in this case, does not apply to plaintiff's Mortgage, since the application of 42(b) is limited to deeds, and not mortgages. DeJongh bases this argument on the drafters' supposed omission of the phrase "of land or any interest in lands therein" as a modifier of the word "deed" in § 42(a). DeJongh urges that inclusion of this phrase in § 42(a) and not § 42(b) signifies an unexpressed legislative intent to limit subsection 42(b)'s application to deeds, and not other interests in land, such as mortgages.

▪ The court rejects DeJongh's interpretation. The phrase "of land or any interest in lands therein" modifies the entire phrase, "Deeds executed within the Virgin Islands." Subsection (a) applies to the manner of executing deeds which are executed in the Virgin Islands *and* which concern land and interests in land and interests in land located in the Virgin Islands. Subsection (b), on the other hand, is a comity provision which recognizes the interests of foreign jurisdictions in the validity of their own particular execution requirements. It refers to *any* deeds executed outside of the Virgin Islands and in foreign jurisdictions. The term "deed" necessarily and obviously includes every interest in land from ownership in fee simple to a mortgage to a leasehold, regardless of where the real property is located.

▪ Thus, because it is undisputed that the subject mortgage was executed in New Jersey, § 42(b) applies, and New Jersey law controls. The New Jersey statute requires that a mortgage be witnessed by one witness and be in recordable form. Carteret complied with that requirement. Therefore, this court finds that Carteret's not having the attestation of two witnesses does not render invalid the execution of the Mortgage relating to the Virgin Islands property.

DeJongh contends, in the alternative, that plaintiff's Mortgage is not properly recorded under New Jersey law because the mortgage's notarial acknowledgment is deficient. DeJongh argues that the Mortgage's acknowledgment fails to comply with New Jersey law in that it (a) fails to state the principal place of business of the mortgagor, (b) fails to state that the mortgagor received a copy of the Mortgage, (c) does not contain a certification identifying the name and signature of the preparer of the acknowledgment, and (d) was not made personally by the party authorized to execute the document, but by the Corporate Secretary.

294

DeJongh's first objection is baseless since N.J.S.A. 46:15-4 only requires the mortgagee and not the mortgagor to list its principal place of business. Carteret's Mortgage contains the required information. Carteret's principal place of business is listed as 200 South Street Morristown, New Jersey. See Exhibit 6 attached to Steven Cole's affidavit submitted March 28, 1991.

DeJongh's second objection to the Mortgage is equally meritless, since none of the defendants has ever claimed that it did not receive a copy of the Mortgage and the extension thereto. Even DeJongh has stipulated that the copies of the Mortgage and extensions submitted as exhibits in this action are true and correct copies of the recorded documents.

With respect to the third objection, plaintiff notes that N.J.S.A. 46:15-13 does not require a certification but merely the preparer's identification. While Carteret concedes that the original Mortgage does not identify the preparer of the document, plaintiff notes that the extensions identify the preparer.

Finally, DeJongh's objection that the Corporate Secretary lacked the authority to execute the Mortgage was laid to rest by the defendants who stated that the Corporate Secretary was in fact authorized to execute the Mortgage on behalf of Pelican Beach, the mortgagor. N.J.S.A. 46:14-2, see N.J. Bank v. Azco Realty, 148 N.J. Super 159, 372 A.2d 356 (1977). Thus, Carteret's recording complies with the New Jersey statute.

■■ Moreover, even if Carteret's recording was marred by one or more hyper-technical defects such as those discussed supra, such minor deficiencies are insufficient to destroy the priority of Carteret's recorded lien. According to New Jersey v. Azco Realty Company, Inc., 372 A.2d 356 (N.J. App. Div. 1977), "in certifying the acknowledgment, substantial compliance with the requirements of the statute is sufficient, literal conformity is unnecessary." Id. at 359. As stated in Azco, "a historical study of the Act . . . leads to the conclusion that it was designed to compel the recording of instruments affecting title, for the ultimate purpose of permitting [subsequent] purchasers to rely on the record title and to purchase and hold title to land within [New Jersey] with confidence." Id. at 166 (citing Jones, "The New Jersey Recording Act—A study of its Policy," 12 Rutgers L. Rev. 328, 329–330 (1957)). Thus, "the fundamental purpose of the recording act is to provide notice to subsequent parties in interest and the protection of purchasers and

encumbrances of real property against undisclosed titles and liens." Howard Savings Bank v. Brunson, 582 A.2d 1305, 1307 (N.J. Super. Ct. Ch. Div. 1990). Where, as here, substantial compliance has been met and subsequent parties have been put on constructive notice, the purpose of the recording statute has been met and the lien must be given priority over subsequent lienholders. See also Matthews v. Everitt, 23 N.J.Eq. 473, 476 (1885) ("The reason why a subsequent encumbrancer, who . . . ought to know that a prior encumbrance exists . . . will not be permitted by his act of registry to go ahead of the other for want of registry, is that it would be fraud, an unfair transaction as between honest men to permit him to get such a precedence.").

An appropriate order follows:

### ORDER

AND NOW, this 13th day of August, 1992, upon consideration of plaintiff's motion for summary judgment, defendants' cross-motion to dismiss and for leave to amend answer and file a third-party complaint and counterclaim and defendant DeJongh's motion for summary judgment, and the responses thereto, it is hereby ORDERED that:

1. Carteret's motion for summary judgment is GRANTED and summary judgment is ENTERED in favor of Carteret and against defendants William and Joan Graulich and Pelican Beach Properties, Ltd.

2. Carteret may foreclose upon the property described in the Mortgage executed by the parties dated January 25, 1986.

3. Defendants' cross-motion to dismiss and for leave to amend answer and to file a third-party complaint and counterclaim is DENIED.

4. DeJongh's motion for summary judgment on the lien priority issue is DENIED.

5. DeJongh's motion for summary judgment against Pelican Beach Properties, Ltd., for a debt allegedly owed pursuant to an unexecuted written agreement for architectural services, is DENIED.