**SYLVESTER H. JULIEN, Plaintiff**

**v.**

**COMMITTEE OF BAR EXAMINERS FOR THE PRACTICE OF
LAW, et al., Defendants**

Civ. Nos. 1994-0150, 1995-0061

District Court of the Virgin Islands

Div. of St. Croix

April 15, 1996

ALAN D. SMITH, ESQ., (HODGE AND FRANCOIS), St. Thomas, U.S.V.I., *for Defendants the Committee of Bar Examiners for the Practice of Law et al.*

KWAME O. MOTILEWA, ESQ., St. Thomas, U.S.V.I., *for Defendant Stylish Willis*

SYLVESTER H. JULIEN, Kingshill, St. Croix, U.S.V.I., *Pro se*

FINCH, *Judge*

**OPINION**

This matter is before the Court on defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Having carefully reviewed the parties' submissions, the Court will grant the defendants' motion.

## FACTS AND PRIOR PROCEEDINGS

This action arises from plaintiff Sylvester Julien's repeated attempts to gain admission to the Virgin Islands Bar. Plaintiff first sat for the Virgin Islands bar examination in July 1991. The Chairman of the Committee of Bar Examiners, U.S. Magistrate Judge Geoffrey Barnard, informed plaintiff by letter that he had failed to pass. Defendant Barnard attached to this letter a copy of the "Bar Examination Review Procedures," detailing the steps plaintiff was to take if he wished a review of his examination. Pursuant to these Procedures, an applicant, upon written request, could review the essay questions, his answers, and the model answers. Where the applicant desired further review, he would be permitted to appear before the full Committee of Bar Examiners ("the Committee").

Plaintiff Julien requested a review by the full Committee. His request was granted, and on May 15, 1992, plaintiff appeared before the Committee.[1] Attorney Stylish Willis was also present at this hearing, although for how long and for what purpose is unclear. According to plaintiff, defendant Willis was to have represented him, but declined at the hearing to do so. Plaintiff then attempted to represent himself but, as plaintiff asserts, was unable to do so without Willis' aid. Ultimately, the Committee declined to change plaintiff's score, and by letter dated May 28, 1992, advised plaintiff that he was required to retake the examination.

The following month, plaintiff filed a "Complaint for Writ of Review" in the Territorial Court of the Virgin Islands. In his Complaint, plaintiff recounted the obstacles he encountered while securing a review of his answers to the 1991 bar examination. More particularly, plaintiff contended that his answers were unfairly graded and that he did not have an adequate opportunity for review before the full Committee. Plaintiff requested that the court regrade his examination and, on that basis, recommend his admission to the Virgin Islands Bar. In June 1993, the Territorial Court denied plaintiff's request. *Julien v. Committee of Bar Examiners*, Civ. No. 665-92 (June 28, 1993).

---

[1] According to plaintiff, only defendants Barnard, Steele, White, Rich, and Turner participated in this hearing.

In July 1992, after filing his Territorial Court action but prior to the court's decision, plaintiff again took the Virgin Islands bar examination. Defendant Barnard, by letter of January 21, 1993, informed plaintiff that although he had passed the essay portion of the exam, he had failed the Multi-State portion and his combined score was insufficient to yield a passing grade. According to plaintiff, his written requests to defendant Barnard for a review of this grade were ignored. In February 1994, plaintiff for the third time took the Multi-State portion of the Virgin Islands bar examination. Plaintiff again failed. Plaintiff alleges that he requested from defendants a breakdown of his Multi-State score, but has yet to receive a reply to his request.

In December 1994, plaintiff filed his first complaint in this matter ("*Julien I*") against the Committee, its individual members, and attorney Stylish Willis. Plaintiff's complaint asserted eight separate causes of action: that (1) defendants the Committee and its members "have engaged in a combination and conspiracy to restrain trade and commerce . . . by establishing arbitrary, capricious, and unauthorized admission requirements for potential competitors such as plaintiff" in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2; (2) defendants Willis, Barnard, Steele, White, and Rich, in conspiring to deny plaintiff a full and fair hearing before the Committee, violated the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2; (3) defendants denied plaintiff his rights under the Equal Protection Clause, in violation of 42 U.S.C. § 1983; (4) defendants have deprived plaintiff of due process of law; (5) defendants' interpretation of Rule 56 of the District Court Rules "fails to state a set score required for passing both the MBE and the essay portion of the Bar Examination" and is therefore arbitrary and capricious;[2] (6) defendants' interpretation of paragraph 4 of the Bar Examination Review Procedures, "which requires appli-

---

[2] Rule 56 establishes the written examination as a requirement for admission to the Virgin Islands Bar, and provides that "when an applicant has satisfactorily passed the Bar Examination, and has met all the other requirements of this rule, the Committee of Bar Examiners shall so certify to the district court and he shall be admitted to the Virgin Islands Bar . . . . "Nowhere, however, does the Rule set forth the score necessary to pass the written examination.

Effective October 1, 1991, the authority to admit attorneys to the practice of law in the Virgin Islands was vested in the Territorial Court. *In re Application of Moorhead*, 27 V.I.

cants' raw score on the MBE to be blended with his average grade on the essay in order to achieve a passing score" is arbitrary and capricious;[3] (7) "as a result of defendants' willful, malicious and retaliatory actions . . . plaintiff was denied the opportunity to be admitted to the practice of law"; and (8) the 1991 and 1992 bar examination essay questions "were so subjective (vague) that some of the questions failed to test the ability of an applicant . . . ." To remedy these alleged wrongs, plaintiff requests both compensatory and punitive damages, declaratory and injunctive relief, and attorney's fees.

Six months prior to filing *Julien I*, in July 1994, plaintiff sat a fourth time for the Virgin Islands bar examination. Defendant Barnard again wrote to plaintiff Julien, in September 1994, informing him that although he had passed the essay portion of the exam, he had failed the Multi-State portion and had attained a combined score insufficient to pass. Plaintiff subsequently reviewed his essay scores. Plaintiff also wrote to defendant Barnard, with a copy to Territorial Court Judge Verne Hodge, requesting a review of his essay results before the full Committee.[4] According to plaintiff, his request went unanswered. When plaintiff called the office of defendant Barnard, on December 14, 1994, plaintiff alleges that he was told that the procedures had been changed and that he could no longer receive a review before the full Committee. Under the new procedures, as set forth in Rule 304(g) of the Rules of the Territorial Court, an applicant's request for review would be sent to a single examiner, who would review the challenged grade to determine if a higher score was merited.

Plaintiff was subsequently informed by defendant Barnard that a review of his examination had been done and that plaintiff had failed to achieve a passing score. Defendant Barnard also informed plaintiff that he would have to comply with Territorial Court Rule

---

74 (1992). The Territorial Court adopted Rule 56 virtually verbatim on March 30, 1992, as Rule 302 of the Territorial Court Rules.

[3] Pursuant to paragraph 4, "where the applicant sat for both the essay and the [Multi-State] sections, each applicant's average grade on the essay part of the examination and his raw score on the Multi-state Bar Examination part are combined into a single percentage score . . . to determine his overall passing or failing grade."

[4] Plaintiff sought a review of the essay portion of the exam in the hope that his score on that segment would be increased, thus giving him a combined score sufficient to pass.

304(h)(1) before he could retake the bar examination. Pursuant to Rule 304(h)(1), an applicant who had failed the bar examination three times could retake the exam only with "leave of the Presiding Judge of the Territorial Court upon a showing that he has completed a current, accredited bar review course of at least six weeks duration."

Aggrieved anew, on May 16, 1995, plaintiff filed a second suit in this Court ("*Julien II*") against the Committee, its newly-named individual members, and Judge Hodge. Plaintiff's complaint alleged that (1) defendants, "through misuse of their official positions . . . and in their individual capacity in engaging in a combination and conspiracy with defendant Judge Verne A. Hodge," violated plaintiff's due process rights; (2) defendants similarly conspired to deprive plaintiff of his equal protection rights; (3) defendants denied plaintiff equal protection of the laws, in violation of 42 U.S.C. § 1983; (4) defendants denied plaintiff due process, in violation of 42 U.S.C. § 1983; (5) defendants denied plaintiff equal protection, in violation of 42 U.S.C. § 1985(3); (6) Rule 304 is a "retrospective rule/law" analogous to an Ex Post Facto law; (7) defendant Barnard is illegally in office, as are several other Committee members; and (8) the actions of defendants were arbitrary and capricious and plaintiff is thus entitled to a writ of review pursuant to V.I. Code Ann. tit. 5, § 1421 *et seq.*

Defendants the Committee of Bar Examiners, its members, and Judge Hodge have filed a motion to dismiss in both *Julien I* and *Julien II*. Defendant Stylish Willis joined in the motion filed in *Julien I*. The Court has consolidated these actions and proceeds to analyze the motions on their merits.

## DISCUSSION

The Court notes at the outset that a Rule 12(b)(6) motion to dismiss a complaint is subject to a stringent standard of review. "The appropriate standard for deciding to dismiss a claim is whether it appears beyond doubt that plaintiff can prove no set of facts to support his claim." *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). The Court is required, moreover, to view the factual allegations in the complaint as true. *See D.P.*

286

*Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir. 1984).

 The Court also takes note of Julien's status as a pro se plaintiff. The Supreme Court has directed that pro se pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972). Accordingly, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). That said, the law of this Circuit requires the dismissal of even pro se complaints when such complaints contain only vague and conclusory allegations of unconstitutional conduct. *See Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir. 1981).

With this standard in mind, the Court turns to the merits of plaintiff's complaints.

### I. Julien I

As noted, plaintiff in *Julien I* alleges various constitutional violations, violations of the Sherman Act, and several claims under local law. For clarity, the Court first considers plaintiff's claims against the Committee of Bar Examiners and its individual members and then addresses the claims against defendant Stylish Willis.

### 1. The Committee of Bar Examiners

Defendants raise, as a threshold matter, two doctrines that they allege bar plaintiff's claims: (1) absolute judicial immunity; and (2) res judicata.[5] The Court considers each in turn.

---

[5]Defendants also suggest that, as a threshold matter, the Supreme Court's decision in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983), bars plaintiff's claims. In Feldman, the District of Columbia Court of Appeals denied plaintiffs' request for waivers from the bar admission rule requiring applicants to have graduated from an accredited law school. The plaintiffs then filed § 1983 actions in federal district court. The Supreme Court held that to the extent that plaintiffs sought review of the District of Columbia Court of Appeals' denials of their

## A. Judicial Immunity

Defendants the Committee and its members argue strenuously that plaintiff's claims are barred by the doctrine of judicial immunity. The Court is inclined to agree.

Judges traditionally have been protected by a judicial immunity that finds its origins in common law. *See Bradley v. Fisher*, 80 U.S. 335, 13 Wall. 335, 357, 20 L. Ed. 646 (1872) (Noting that judicial immunity was "the settled doctrine of the English courts for many centuries"). This protection is premised upon the belief that if judges were personally liable for erroneous decisions, the fear of litigation would hinder them from impartial adjudication. Further, because most judicial mistakes are susceptible to correction upon review, there is little need to expose judges to personal liability.

The Supreme Court most recently defined the scope of judicial immunity in *Forrester v. White*, 484 U.S. 219, 98 L. Ed. 2d 555, 108 S. Ct. 538 (1988). As the Court explained, "the decided cases . . . suggest an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Id.* at 227. "Here," the Court continued, "as in other contexts, immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Id.* (emphasis in original).

Applying the teachings of *Forrester*, courts have consistently held that admission to a jurisdiction's bar is a peculiarly judicial function. *See, e.g., Marin v. Hazelton*, 916 F.2d 716, 1990 WL 157128 (9th Cir. 1990) (unpublished memorandum) ("Determining whether a particular individual is suited to be a member of the bar is inherently a judicial function, one closely tied to the process of resolving the cases these members of the bar will be presenting to

---

petitions for waiver, the district court lacked subject-matter jurisdiction over their complaints. The Court premised its decision on the fact that under 28 U.S.C. § 1257, district courts lack the authority to review the decisions of the highest court of a state. *See* 28 U.S.C. § 1257 (providing that final judgments rendered by the highest state court in which a decision could be had may be reviewed only by the Supreme Court).

Defendants now argue that plaintiff is requesting this Court to review the Territorial Court's final judgment, in violation of the principles articulated in *Feldman*. In seeking to apply *Feldman* here, defendants overlook a substantial hurdle to their claim, however. Defendants make no argument as to whether 28 U.S.C. § 1257 is applicable in this jurisdiction. Ultimately, the Court need not resolve this difficult question, as the Court finds other reasons to grant defendants' motion.

the courts."), *cert. denied*, 502 U.S. 888, 116 L. Ed. 2d 203, 112 S. Ct. 249 (1991); *McFarland v. Folsom*, 854 F. Supp. 862, 875 (M.D. Ala. 1994) (same); *Diaz v. Moore*, 861 F. Supp. 1041, 1049 (N.D. Fla. 1994) (same); *Hampton v. Tennessee Board of Law Examiners*, 770 S.W.2d 755, 762 (Tenn. App. 1988) (same), *cert. denied*, 493 U.S. 975, 107 L. Ed. 2d 501, 110 S. Ct. 498 (1989); *see also District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 481, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983). Particularly enlightening is the Sixth Circuit's decision in *Sparks v. Character and Fitness Committee*, 859 F.2d 428 (6th Cir. 1988), *cert. denied*, 489 U.S. 1011, 103 L. Ed. 2d 183, 109 S. Ct. 1120 (1989). The *Sparks* Court characterized the power to determine eligibility for membership in the bar as an inherently judicial function:

> [s]ome functions performed by courts are so inherently related to the essential functioning of the courts as to be traditionally regarded as judicial acts. Determining the composition of the bar is just such an historic and traditional function. The establishment of criteria for determining the intellectual competence, academic preparedness, and moral fitness of persons who petition the court for the privilege of undertaking the confidential trust of serving the court as one of its professional officers has always been a function confined to the courts themselves. It has been universally thought that the courts are best equipped to understand the requirements for adequate representation of lay persons before the courts and to identify the qualifications of those who would undertake such representation as the courts' officers. That inherent expertise, and the exercise of the power to apply it in admitting and rejecting candidates to the practice of law, functions rooted in tradition and history, are arguably as fundamental to the sound functioning of the judiciary as is the task of resolving the disputes such officers present.

*Id.* at 434.

The *Sparks* court further concluded that absolute judicial immunity cloaked not only judges performing this inherently

judicial function. Rather, the court held that when the State Supreme Court establishes a committee for the purpose of administering procedures for the admission of persons to the bar, the members of this committee act on behalf of the court when performing their official duties and thus are entitled to the same immunity afforded judges in the performance of their duties. As the court explained,

> [t]he act of considering an application to the bar is a judicial act. And it is no less a judicial act simply because it is performed by nonjudicial officers in whom the responsibility for the performance of such duties is lawfully delegated by the judiciary. Therefore, those who perform those duties on behalf of the judiciary are entitled to the same judicial immunity as would be enjoyed by judicial officers performing the same act.

*Id.* at 431 (quotations omitted). In short, then, admission to the state bar is so closely related to the essential functioning of the courts that it must be a judicial function, even if the admitting individuals are designees of the court rather than the court itself.

■ ■ This Court finds the reasoning of *Sparks* to be both persuasive and applicable. Determining the qualifications of applicants to the Virgin Islands Bar is a judicial function as is the holding of hearings for this purpose. To the extent that defendants engaged in this conduct, they were performing duties imposed upon them by the District Court and, later, by the Territorial Court of this jurisdiction. *See* LRCi 56 (revoked) (directing "the judge of the district court" to appoint individuals to the Committee of Bar Examiners and instructing the Committee members to evaluate the professional fitness and moral character of applicants to the Virgin Islands Bar); Terr. Ct. R. 302 (Nov. 1994) (Committee members are to be appointed by the Presiding Judge of the Territorial Court "to assist the Court in the administration of the V.I. Bar Examination, which includes character investigations and other matters related to admission to the V.I. Bar."). For this reason, defendants are entitled to absolute judicial immunity from suits for money

290

damages.[6] *See Pulliam v. Allen*, 466 U.S. 522, 536-42, 80 L. Ed. 2d 565, 104 S. Ct. 1970 (1983) (rejecting a rule of judicial immunity from prospective injunctive relief).

■■ Plaintiff does not appear to dispute the conclusion that assessing the qualifications of applicants for admission to the bar is a judicial act. Rather, plaintiff argues that immunity does not extend to defendants in the instant case because they acted in bad faith. As the Supreme Court has made quite clear, however, "judicial immunity is an immunity from suit, not just from ultimate assessment of damages. . . . Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11, 116 L. Ed. 2d 9, 112 S. Ct. 286 (1991) (per curiam); *see also Pierson v. Ray*, 386 U.S. 547, 554, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967) ("Immunity applies even when the judge is accused of acting maliciously and corruptly . . . ."). Indeed, judicial immunity is overcome only in two circumstances: where judicial officers have engaged in "non-judicial actions" — that is, actions not taken in their judicial capacity — and where such officers have taken actions that, although judicial, are taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 12. Plaintiff has made no such assertions here.

■ Because defendants are entitled to absolute judicial immunity, the Court is compelled to dismiss Counts I through IV of

---

[6] To the extent Julien's complaint takes issue with the promulgation of rules governing bar admission, judicial immunity would not apply. *See Supreme Court v. Consumers Union, Inc.*, 446 U.S. 719, 731, 64 L. Ed. 2d 641, 100 S. Ct. 1967 (1980) (refusing to extend judicial immunity to judges acting to promulgate a code of conduct for attorneys). Nonetheless, the Court is persuaded that bar examiners engaged in the promulgation of rules for admission are protected by legislative immunity and thus are similarly immune from suit. *See id.* (noting that legislative immunity extends to State Supreme Courts engaged in enacting rules for regulating the conduct of state bars); *McFarland v. Folsom*, 854 F. Supp. 862, 875 (M.D. Ala. 1994) (extending legislative immunity to the act of establishing rules governing bar admissions); *Levanti v. Tippen*, 585 F. Supp. 499, 505 (S.D. Cal. 1984) (same).

plaintiff's complaint, each of which seek as relief only monetary damages.[7]

## B. Res Judicata

The Court turns to defendants' second argument — that plaintiff's claims are res judicata and thus precluded.

The doctrine of res judicata has been defined as "the legal principle that a final judgment, rendered upon the merits, without fraud or collusion, by a court which had jurisdiction over the parties and the subject matter, is conclusive in a subsequent action between the parties or their privies based upon the same cause of action." *Bank of Nova Scotia v. Bloch*, 533 F. Supp. 1356, 19 V.I. 45, 51 (D.V.I. 1982) (citing Restatement of Judgments § 1). Applying this doctrine, plaintiff's claims will be barred if (1) the Territorial Court's judgment is final and on the merits; (2) the claims asserted by plaintiff in Territorial Court are the same as those he asserts here; and (3) defendants in the instant suit are in privity with the Committee, the sole defendant in the Territorial Court action.

Plaintiff suggests that the first prong of this analysis — a prior decision on the merits — has yet to be satisfied. The court disagrees. The Territorial Court did not dismiss this case on procedural or jurisdictional grounds. The court did conclude that plaintiff failed to satisfy the statutory prerequisites for the issuance of a writ of review. In so deciding, however, the Court expressly held that the Committee of Bar Examiners neither "exercised its functions erroneously" nor "exceeded its jurisdiction." *See Richards v. Christian*, 10 V.I. 222, 223 (D.V.I. 1973) (noting that the court's analysis of a petition for writ of review "necessarily entails an assessment of the entire decisionmaking process").

The Court turns to prong two of its analysis. In determining the identity of claims, the Restatement — governing law in this

---

[7] The Court notes a second valid reason for the dismissal of Counts III and IV (alleging violations of 42 U.S.C. § 1983), to the extent that these Counts are against defendants in their official capacities. It is well established that neither the Territory of the Virgin Islands nor its officers acting in their official capacities are "persons" under 42 U.S.C. § 1983. *See Ngiraingas v. Sanchez*, 495 U.S. 182, 192, 109 L. Ed. 2d 163, 110 S. Ct. 1737 (1990). Because the Committee is an agency of the territory and because its members are territorial officials, claims against them in their official capacity must be dismissed. *Cf. Ginter v. State Bar*, 625 F.2d 829, 830 (9th Cir. 1980) (recognizing State Bar Association as an arm of the State and thus not subject to suit under the Eleventh Amendment).

jurisdiction — utilizes a transactional approach. As explained in section 24 of the Restatement of Judgments,

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger and bar . . . the claim extinguished includes all rights of the plaintiff to all or any part of the transactions, out of which the action arose.
> (2) What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such consideration as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectation or business understanding or usage.

■ The Court is persuaded that the Territorial Court action and plaintiff's instant claims arise from the same core of operative facts — facts related in time, space, and origin. The factual predicate of both actions is the grading and review of plaintiff's 1991 bar examination. In reciting the facts relevant to this action, plaintiff has essentially restated those factual assertions contained in his Territorial Court Complaint. The Court finds that the claims in both actions are fundamentally the same.

■ Similarly, the Court is persuaded that privity exists between the parties in these two actions. Privity arises when "a close or significant relationship exists between the parties." *Carteret Savings Bank v. Pelican Beach Properties, Ltd.*, 27 V.I. 285, 291 (D.V.I. 1992). Privity also exists where "the nonparticipating party's interest is represented by, or is derivative of, the parties in the original litigation." *Id.* The Court finds there to be privity under either of the above standards with respect to the Committee, sued in the Territorial Court action, and its individual members, named in the instant suit. *See Diaz v. Moore*, 861 F. Supp. 1041, 1047 (N.D. Fla. 1994) (finding privity for purposes of res judicata between Florida Board of Bar Examiners and its individual members); *cf. Mandarino v. Pollard*, 718 F.2d 845, 850 (7th Cir. 1983) ("A government and its

officers are in privity for purposes of res judicata."), *cert. denied*, 469 U.S. 830, 83 L. Ed. 2d 59, 105 S. Ct. 116 (1984).[8]

Ordinarily, the determination of finality, identity, and privity would end the Court's inquiry. The Court recognizes that there are facts asserted in plaintiff's instant complaint that arose after plaintiff filed his action in Territorial Court, however. Plaintiff's assertions regarding the July 1992 and February 1994 bar exams, and defendants' conduct in administering, grading, and reviewing such exams, are claims that plaintiff could not have brought in Territorial Court. Accordingly, to the extent plaintiff's causes of action are premised upon such facts, it would be improper to dismiss them. *See Alleghany Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1429-30 (3d Cir. 1994) ("While a 'judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.'" (quoting *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 328, 99 L. Ed. 1122, 75 S. Ct. 865 (1955)); *see also* Restatement (Second) of Judgments § 24 cmt. f (1982) ("Material operative facts occurring after the decision of an action with respect to the same subject matter may . . . . be made the basis of a second action not precluded by the first."). The Court must thus determine which of plaintiff's claims are saved from preclusion by the existence of new factual bases.

As noted, plaintiff's remaining claims against the Committee and its members are as follows: that (1) defendants' interpretation of Rule 56 of the District Court Rules "fails to state a set score required for passing both the [Multi-State] and the essay portion of the Bar Examination" and is thus arbitrary and capricious (Count V); (2) defendants' interpretation of paragraph 4 of the Bar Examination Review Procedures, requiring that applicants' raw scores on the Multi-State be blended with their average grade on the essay, is arbitrary and capricious (Count VI); (3) defendants' malicious actions denied plaintiff the opportunity to be admitted to the practice of law (Count VII); and (4) the 1991 and 1992 Bar

---

[8] For purposes of the Court's discussion regarding Attorney Willis, the Court notes here that it finds Attorney Willis' interests to have been fully and fairly represented by the Committee in the initial suit.

Examination essay questions "were so subjective (vague) that some of the questions failed to test the ability of an applicant" (Count VIII). The Court recognizes that plaintiff could not have asserted the latter claim of Count VIII — that the 1992 bar exam was overly subjective — in Territorial Court as plaintiff had not yet taken the 1992 bar at the time of filing his complaint. Similarly, plaintiff's contentions in Count VII implicate a course of conduct on the part of defendants, conduct occurring between May 1992 and December 1994. To the extent that these claims are premised upon facts arising after June 1992, when plaintiff filed his action in Territorial Court, such claims too should not be precluded.

 That said, all remaining claims — Counts V, VI, and VIII (as it pertains to the 1991 bar examination) — fall squarely within the parameters of res judicata. Although it is true that plaintiff did not raise these particular claims in Territorial Court, it is well established that res judicata precludes a party both from relitigating matters that have been litigated and decided and from litigating matters that have never been litigated, yet should have been advanced in an earlier suit. 18 Charles A. Wright et al., *Federal Practice and Procedure* § 4406 (1981). Plaintiff could have brought these remaining claims in Territorial Court, but did not.[9] Accordingly, plaintiff's challenge to Rule 56, to paragraph 4 of the Bar Examination procedures, and to the essay portion of the 1991 exam are res judicata and thus precluded.

### C. Subject Matter Jurisdiction

 Having dismissed all other claims against the Committee and its members in *Julien I*, the only remaining claims are plaintiff's contentions that (1) defendants' conduct denied plaintiff "the opportunity to be admitted to the practice of law" (Count VII); and (2) the July 1992 essay exam was overly vague and that plaintiff "has suffered severe emotional harm as a result of defendants' bias [sic] form of questions on the essay examination" (Count VIII). The

---

[9] It is irrelevant that plaintiff sought only a writ of review and thus may not have been able to assert in Territorial Court all of the particular claims asserted here. The res judicata effects of a final judgment on the merits are not altered by the fact that the plaintiff sought recovery in a court of limited jurisdiction. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 69 L. Ed. 2d 103, 101 S. Ct. 2424 (1980); *see also* Rest. (Second) of Judgments § 24 cmt.g (1982).

Court interprets the first of these claims as an awkwardly stated claim of intentional interference with business relations. The second claim appears to be one of intentional infliction of emotional distress. So construed, both claims implicate local civil matters — matters over which this court lacks jurisdiction.

Pursuant to the Revised Organic Act of the Virgin Islands, "the District Court of the Virgin Islands shall have general original jurisdiction in all causes in the Virgin Islands the jurisdiction over which is not then vested by local law in the local courts of the Virgin Islands." Revised Organic Act of the Virgin Islands § 22(b) (codified at 48 U.S.C. § 1612(b) (1988)). V.I. Code Ann. tit. 4, § 76(a) vests original jurisdiction over all local civil actions, regardless of the amount in controversy, in the Territorial Courts. As plaintiff's claims are purely "civil actions" within the meaning of section 76(a) this Court may not exercise jurisdiction over them. *See Brow v. Farrelly*, 994 F.2d 1027, 1034 (3d Cir. 1993) ("[4 V.I.C. § 76(a)] divests the District Court of the Virgin Islands of jurisdiction over all local civil actions . . . .").

## 2. Attorney Stylish Willis

The Court turns next to defendant Stylish Willis. As the Court understands plaintiff's claims, only Counts I through IV and Count VII apply to Willis. The remaining Counts, involving the administration of the bar and the rules governing its review, in no way implicate Willis.

■ As a threshold matter, the Court rejects Willis' demand for judicial immunity. Willis notes that he was a proctor during the July 1991 bar exam and argues that it is his performance of this "judicial function" of which plaintiff complains. Willis misunderstands plaintiff's complaint. Willis' proctoring is not the conduct with which plaintiff takes issue; rather, it is Willis' alleged failure to adequately represent plaintiff in the review hearing before the Committee that plaintiff challenges. Such complaint, premised as it is upon a private contractual relationship between plaintiff and defendant, cannot be immunized as a judicial function.

That said, the claims against Willis nonetheless must fail as they

are res judicata. The Court is persuaded that the prerequisites for the application of res judicata in this matter are satisfied: the Court has determined that (1) the Territorial Court's decision is final and on the merits; (2) the claims asserted by plaintiff here arise from the same set of operative facts in issue in Territorial Court; and (3) defendants in the instant suit — including defendant Willis — are in privity with the Committee, the sole defendant in the Territorial Court action. There is no reason that plaintiff could not have raised these claims against Willis in Territorial Court. This Court will not entertain them.

For these reasons, the Court grants defendants' Rule 12(b)(6) motion to dismiss Julien I. An appropriate order is attached.

## II. Julien II

The Court turns to plaintiff's complaint in *Julien II*. The crux of this second action is plaintiff's complaint that he was denied due process and equal protection of the laws when the defendants refused to grant him a review hearing before the full Committee. For reasons discussed below, the Court is compelled to dismiss all causes of action in plaintiff's second complaint.

The first five Counts of plaintiff's complaint allege violations of 42 U.S.C. §§ 1983 and 1985.[10] To remedy these alleged violations, plaintiff seeks monetary relief. For reasons already discussed, such Counts cannot stand. Defendants, in assessing plaintiff's qualifications for admission to the bar, were performing a judicial function and thus are entitled to judicial immunity.[11] To the extent plaintiff challenges defendants' conduct in promulgating Rule 304, this would not be a judicial function, but a legislative one. In this

---

[10] Plaintiff's first two Counts do not expressly invoke § 1983; rather, they allege only that defendants have engaged in "combination and conspiracy" to deprive plaintiff of his rights to due process and equal protection. The Court will assume that plaintiff intends to assert § 1983 claims, rather than claims under 42 U.S.C. § 1985(3), in these two Counts; to do otherwise would render plaintiff's first Counts redundant, as plaintiff in Count V expressly asserts a § 1985 claim.

[11] The Court again notes that neither the territory nor its officials are persons for purposes of 42 U.S.C. § 1983. *Ngiraingas*, 495 U.S. at 192. The Court thus must dismiss Counts I through IV as they pertain to defendants in their official capacities.

endeavor, defendants would be protected by legislative immunity.[12] *See supra* n.6.

The Court turns next to Count VI of plaintiff's complaint, in which he contends that defendants retroactively applied Rule 304 — the Rule altering the review process for applicants who had failed the bar examination. The Court disagrees.

Plaintiff is correct that as a rule the retroactive application of statutes is disfavored. The Court notes that this rule "has generally been applied only when application of the new law would affect rights or obligations existing prior to the change in law," however. *Davis v. Omitowoju,* 883 F.2d 1155, 1170 (3d Cir. 1989); *see also People v. Martin,* 1 V.I. 140, 146 (D.V.I. 1928). The law of procedure, in contrast, may always be changed so long as it affects no legal rights.

Here, Rule 304 altered the procedure by which the Board of Bar Examiners reviewed applicants' exams; it did not deprive applicants of the right of review. Such a change is purely procedural. *See Martin,* 1 V.I. at 147 ("The rules by which proceedings are governed are the rules of procedure."). Accordingly, plaintiff's contention must fail.

Having dismissed plaintiff's federal claims (Counts I through VI), the Court finds that it lacks jurisdiction over the remaining claims in plaintiff's complaint — his contentions that (1) defendant Barnard, and other Board members, are illegally serving on the Board (Count VII); and (2) he is entitled to a writ of review (Count VIII). Both claims are local civil actions within the meaning of section 76(a). *See Dawson v. Government Employees Serv. Comm'n,* Civ. No. 1992-010 (D.V.I. May 19, 1994) (unpublished opinion) (federal district court lacks subject matter jurisdiction over petitions for writs of review, as they are local civil actions). Accordingly, the Court cannot entertain them.

---

[12]Whether defendant Judge Verne Hodge was performing a judicial function, as the Committee and its members were, is open to dispute. Regardless, he is similarly immune. Plaintiff's complaint against Judge Hodge appears to be that Judge Modge conspired with Committee members to amend Rule 304 such that plaintiff could no longer obtain review before the full Committee. The challenged conduct — the promulgation of Rules governing bar admissions — entitles Judge Hodge to legislative immunity. *See* supra n.6.

## CONCLUSION

The Court recognizes that plaintiff is sincerely aggrieved. Nonetheless, plaintiff has failed to state a claim upon which this Court may award relief. The Court grants defendants' motion to dismiss both as to *Julien I* and *Julien II*. An order so stating is attached.

## ORDER

This matter comes before the Court upon defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Having fully considered the submissions and the arguments of both parties, it is hereby

ORDERED that defendants' motion to dismiss plaintiff's actions, civil numbers 1994-0150 and 1995-0061, is GRANTED.